**WASHINGTON GAS LIGHT CO. v. BIANCANIELLO.**

**No. 10448.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 10, 1950.

Decided July 3, 1950.

Mr. John J. Wilson, Washington, D. C., with whom Messrs. Roger J. Whiteford, Jo. V. Morgan, Jr., and William Edward Gallagher, all of Washington, D. C., were on the brief, for appellant.

Mr. Leonard S. Melrod, Washington, D. C., with whom Mr. Albert Brick, Washington, D. C., was on the brief, for appellees.

Before CLARK, BAZELON, and FAHY, Circuit Judges.

CLARK, Circuit Judge.

This appeal arises out of a suit by appellees to recover damages for the wrongful death of Giuseppe Biancaniello and for injuries to two other appellees resulting from an explosion which occurred in the basement of a house at 911 Decatur Street, N.W., on the evening of May 26, 1947. Appellant, after moving below for a directed verdict, and a judgment N.O.V. or in the alternative for a new trial, comes before us now urging reversal principally on the ground that the lower court erred in submitting the case to the jury because the evidence was insufficient to establish a prima facie case.

On the evening of the explosion Giuseppe Biancaniello, his brother, and a nephew

were all in the basement of the Biancaniello home. Giuseppe was laying down a wood-block flooring, using as a cement an inflammable mastic called Miracle Adhesive. This mastic was spread on the floor, and the container was over in the same corner of the room as the gas meter. In the back room of the basement, separated by an archway, were located the oil burning furnace and a gas operated hot water heater. It may be assumed for the purposes of this opinion that this gas heater was at all times burning, that is, that the pilot light was never extinguished by virtue of any mechanical failure. This is consistent with appellees' theory that it was the flame from this heater which ignited the gas vapors and with appellant's claim that at all times there was a flame in the heater. We do not necessarily need to infer, however, as appellant would have us do, that therefore the heater could not have caused the explosion because the evidence shows that the heater could be burning and still be leaking gas. The testimony also establishes that the two windows in the front room and the two windows and door in the back room were all opened.

Giuseppe's brother and nephew had watched him work for about an hour when suddenly they saw a blue flame shoot through the archway from the room in which the hot water heater was located. It went high in the air across the room to the corner in which the gas meter and the can of mastic were located. The resulting explosion inflicted the burns which caused Giuseppe's death and the injuries to the other two. It is significant that it was the upper parts of the bodies of the three victims which sustained the heavy burns. After the explosion the meter in the corner was seen to be on fire as was the can of mastic, but the mastic which was spread on the floor did not ignite. Testimony was adduced from experts to the effect that a blue flame is more consistent with a gas explosion than an ignition of mastic vapors which would create a yellow flame; that gas vapors, being lighter than air, tend to rise to the ceiling while mastic vapors are heavy and hug the floor; and that mastic is not explosive, but merely inflammable.

Appellees brought forth witnesses who testified to smelling gas about the premises both before and after the explosion. The decedent's daughter said that she had smelled gas about a half an hour before while she was making a phone call in the hall directly above the spot where the gas meter was located. She also revealed on cross-examination by appellant that others had told her that they smelled gas after the explosion. Her sister also told of smelling gas immediately afterwards, as she ran downstairs to see what had happened. Several witnesses testified to the odor of gas about the premises a couple of months earlier, though none could testify to any gas odor between the time the old gas range was disconnected and the evening of the explosion. And the statement of Giuseppe to the effect that the gas meter had leaked and caused the explosion was admitted as a part of the *res gestae*.

Appellant introduced evidence to the effect that gas in sufficient quantity to cause an explosion would also contain a quantity of carbon monoxide sufficient to have asphyxiated the occupants of the basement long before the explosion occurred.

From the foregoing appellant stoutly asserts that it was error for the court below to have submitted the case to the jury, because (1) the facts of the explosion itself are as consistent with a mastic ignition as they are with a gas explosion, and (2) the uncontroverted fact that sufficient gas to cause such an explosion would have contained a lethal dose of carbon monoxide completely eliminates the possibility of a gas explosion. It is the opinion of this court however that the evidence introduced by the appellees was sufficient to warrant a finding that the explosion resulted from gas rather than mastic vapors. Nor does appellant's uncontroverted fact in regard to carbon monoxide eliminate the gas explosion hypothesis. Although appellant has shown that there would be a lethal dosage of carbon monoxide in any quantity of gas sufficient to have caused the explosion, it has failed to show that the occupants of the cellar room were exposed to the gas vapors for a sufficient length of time to have absorbed a lethal dosage into their

blood streams. Appellant's conclusion that Giuseppe, his brother, and his nephew would all have been dead from asphyxiation prior to the time that the explosion occurred necessitates the assumption that they had been exposed to the lethal concentration for the required length of time. Such an assumption cannot be made on the basis of the facts before us. In the first place we do not know how long it took the gas to build up into an explosive amount. It may have taken a lesser time than that required to asphyxiate the occupants. Secondly, it must be borne in mind that the windows in the basement were at all times open. This being the case, it is reasonable to suppose that a constant supply of fresh oxygen was being provided to the blood-streams of these individuals so that it would take longer for them to have been asphyxiated than had they been in a closed room.

Eliminating, therefore, appellant's argument in regard to the sufficiency of the evidence to establish that the instant explosion was caused by gas, we may now proceed to their contentions in regard to the insufficiency of the evidence to establish negligence.

The facts are these. On May 6, 1947, one of appellant's employees went to the Biancaniello home to change the gas meter, the old one being removed because it was "aged in service". Whether or not he was sent there as a result of certain complaints which Mrs. Biancaniello testified she made in person to the gas company the previous month was in issue, as was the fact whether any complaints at all were made during 1947. Appellant's employee testified that to his knowledge he did not go there by virtue of any complaint; but the fact remains that he was ordered there by appellant, and the witness was without knowledge of any reason save that of changing the meter. But that does not eliminate the possibility that he was sent there because of a complaint. Appellant also sought to discredit Mrs. Biancaniello's claim that she had complained to the gas company about high bills by showing that her bills were not appreciably higher during the month of April when the complaint was claimed to have been made than during any other month of that year although in the previous year, there had been a recorded complaint about a high gas bill; but the jury apparently chose to believe Mrs. Biancaniello. We will not reevaluate her credibility.

After replacing the old meter, appellant's employee examined the hand of the test dial on the new meter, and its movement indicated to him that there was a leakage somewhere in the system. He checked the appliances and found a leak at the main burner stop-cock of the hot water heater which he attempted to repair. But on again checking the test dial he found the hands still showing movement. A further check revealed a leak in an old gas range in the basement. He advised that the range be disconnected. He also discovered that the safety-pilot rod on the hot water heater was frozen and left a pink tag so stating. Another employee returned the next day to unfreeze the safety-pilot rod. He did this in the approved manner, but neither he nor the employee who came the first day rechecked the test dial. Thereafter, Mrs. Biancaniello had the old gas stove disconnected and, at a time prior to the explosion, notified appellant of this fact, but appellant at no time returned to recheck the test dial for further indications of escaping gas.

In response to an emergency call immediately after the explosion one of appellant's employees went to the premises and removed the meter, putting in another one. Thereafter it was disposed of by appellant who attempted to explain its failure to produce this crucial piece of evidence on the ground that, because it had been in a fire and the paint appeared to be badly burned on the outside, it was condemned and disposed of to a junk dealer.

The day following the explosion another of appellant's employees came to the premises pursuant to an order to check the pilot on the hot water heater because of a complaint that it burned high. He found that there was a leak and that the safety-pilot rod was again frozen. These he corrected.

■ On the basis of the foregoing the appellant earnestly urges that submission of the case to the jury permitted speculation

as to appellant's negligence because the facts were inadequate to support such a finding. We have said, however, that "A gas light company is bound to exercise such care, skill, and diligence in all its operations, and in the transaction of all its business, as the difficulty, delicacy, and danger of its business requires. Its fittings must be of the highest character, and every precaution for safety must be taken within the bounds of reason." Gas Consumers' Ass'n v. Lely, 1932, 61 App.D.C. 29, 31, 57 F.2d 395, 397.

Thus it is clear that a high degree of care and skill is required of appellant in the conduct of its business because of the inherently dangerous nature of the commodity which it markets. And it is the opinion of this court that there was sufficient evidence from which the jury could find that appellant had failed to measure up to this standard in instant case. When appellant's servants last checked the test dial on the meter its movement indicated that there was still a leakage somewhere in the system. One leak had been found in the old gas range in the basement and Mrs. Biancaniello had been advised to have it disconnected. She followed this advice and so notified appellant. Thereafter appellant made no further effort to return to the premises and recheck the test dial for other leaks. Its conduct appears to have proceeded on the premise that eliminating the leak in the old range obviated all the difficulties that may have existed in the system. Such assumptions cannot be made when one is dealing with such an inherently dangerous element, and the jury was entitled to infer notice and negligence 'from the facts. But, argues appellant, the fact that suddenly on the fatal night a sufficient volume of gas to cause the explosion built up defeats the argument that there was a leak during the period between the time the old gas range was disconnected and the time that the explosion occurred, which could have resulted from appellant's negligence in failing to check the test dial;

for there could not have been a leak sooner without there sooner being an explosion or gas being sooner smelled. But again appellant must fail in his argument because there is sufficient evidence in the record for a jury to have found that the explosion resulted from a leak in the meter. That that leak may have started on the day of the explosion is highly possible. Likewise, that the cause of the leak may have been appellant's negligence in either supplying faulty equipment or in negligently installing it are inferences that the jury was entitled to draw in view of the fact that the appellant failed to produce the meter at trial in face of evidence to the effect that it was the meter which was leaking. Certainly it would have been more reasonable for the appellant to have preserved this piece of evidence in view of the possibility of litigation arising out of the explosion than to have disposed of it; and the fact that it did dispose of it under the circumstances permits the inference that had it been introduced at trial it would have been unfavorable to the appellant's case.[1] Appellant's attempted explanation of its failure to produce this meter weakens rather than strengthens the inference. Its own records in that regard were produced and an employee of the service department was brought in as a witness to explain them. He stated that the writing "No test" indicated that in the opinion of the foreman or inspector in the meter shop it was beyond the stage of having a test run on it and so was discarded. At best these records were self-serving and therefore having an employee without knowledge of the facts testify rather than the inspector who actually handled the meter and determined that it should be condemned without a test resulted in a failure to produce the best evidence in explanation of why it was condemned and sold as junk and likewise created a strong circumstance unfavorable to appellant.[2]

There is one other matter which we feel needs discussion in this appeal. Appellant

1. See, Austerberry v. United States, 6 Cir., 1948, 169 F.2d 583, 593; 2 Wigmore, Evidence §§ 285, 291 (3rd Ed. 1940).

2. See, Streck v. St. Louis County Gas Co., (Mo.App.1933) 58 S.W.2d 487, 489.

contends that the appellees cannot rely on the doctrine of *res ipsa loquitur* to carry their burden on the issue of negligence. The principal reason assigned is that *res ipsa* is simply inapplicable to the facts because the cause of the accident was not known and was not in the appellant's control. Appellees on the other hand, while contending that there is ample evidence of specific negligence to sustain the verdict, claim that the doctrine is applicable. But it is not necessary for us to decide the question at this time. The case did not proceed on that theory, nor was it submitted to the jury thereon. The appellees have raised inferences independently of the doctrine sufficient to support a finding of negligence. Thus whether or not they might have relied on *res ipsa* is a question of purely academic interest, and anything we might say in regard thereto would be advisory.

We find no error in the court's failure to grant appellant's various motions. The evidence adequately supported a finding that the explosion was caused by gas vapors and that the appellant's negligence was the proximate cause thereof. The case was properly submitted to the jury which has returned a verdict for the appellees. That verdict and the judgment entered thereon are accordingly affirmed.

Affirmed.