156

WILLIAMS *v.* WILLIAMS.

[Cite as Williams v. Williams, 8 Ohio Misc. 156.]

(No. 34388—Decided July 22, 1966.)

Common Pleas Court of Clermont County.

*Mr. Flach Douglas,* for plaintiff.
*Mr. Vernon Stiver,* for defendant.

NICHOLS, J. This case came on for hearing on the motion for a new trial on the ground of newly discovered evidence, supported by affidavit of the defendant, Elwood M. Williams and that of his attorney, Vernon Stiver, and at which time and before the actual submission of testimony, the plaintiff, through

her attorney, filed a motion to suppress the evidence on the grounds it was obtained through theft and therefore, not eligible to be submitted into evidence. The court received four (4) envelopes under the circumstances that will be set out in this decision, but has not, at this time, seen or examined the contents of these envelopes. In order to give a true picture of the situation, it is necessary to recite briefly the history of these proceedings. The plaintiff, who is a minor, approximately 20 years of age, filed a petition for divorce on January 24, 1966, summons was served the next day and on February 10, 1966, after regular hearing, the matter was heard on the temporary custody of a minor child, 1-½ years of age and an entry was made awarding the temporary custody to the mother and providing that support be paid by the father. Thereafter, on February 28, 1966, an answer was filed denying the allegations of the petition and asking that the father be given custody of the minor child. The case was set for regular hearing on March 24, 1966, at which time, both parties were present, presented their evidence in the case and both were represented by counsel. The court took the matter under advisement in the hope that there would be a reconciliation between the parties and they would continue as the father and mother jointly interested in the raising of their 1-½ year old child. This reconciliation did not materialize and as a matter of fact, the parties got into a fight and each filed criminal proceedings for assault and battery against each other and thereupon, the court, feeling that the possibility of reconciliation was eliminated, rendered such decision on April 12, 1966, which decision was in writing but not journalized. Thereafter, on April 27, 1966, the divorce decree was entered granting a divorce decree to the wife and awarded the wife the custody of the minor child and fixed visitation rights, granting specific time for such visitation and awarding $25.00 a week for the support and providing that would automatically be reduced to $20.00 per week in the event the mother took the child more than 50 miles away from Clermont County; there being some evidence that she desired to relocate in the city of Dayton, Ohio.

Thereafter, on June 3, 1966, a motion for a new trial on newly discovered evidence, material to the defendant which, with reasonable diligence, could not have been discovered or

produced at the trial. The court has not read these letters but they appear on their face of the envelopes to be written to A2C Jerald A. Rooms, whose address is the Mountain Home Air Force Base, Idaho. These letters show by their postmark, the following dates: January 18, 1966, January 20, 1966, January 21, 1966 and February 10, 1966. There is no dispute but that they were written by the plaintiff, Rita Sue Williams. During the trial, evidence was submitted by the defendant that Rita Sue Williams had some association with Jerald Rooms and according to the testimony, she at one time prior to her marriage, had gone with Jerald Rooms and had been engaged to him but the engagement was broken off prior to her marriage to the defendant, Elwood Williams, which marriage took place on January 4, 1964. There was, in the opinion of the court, no evidence of any misconduct between these two parties, presented to the court at the time of the hearing. Actually, Mr. Rooms was in the Air Force stationed in Idaho and the only contact between Rita Sue Williams and Mr. Rooms was one day about the first of January, she met him at a Shopping Center in Milford, Ohio, but the evidence did disclose that the defendant was making this claim and he could have presented any evidence he desired on that matter. The dates of the letters might be significant in that while the petition for divorce was not filed until January 24, 1966, it was subscribed by the plaintiff, through her next of friend, on the 14th day of January 1966, so, at the time the first 3 letters were written, the petition had been signed, ready for filing but not actually filed. The 4th letter was sent after the date of the filing of the petition.

The method in which the defendant obtained possession of these letters and which is claimed by the plaintiff to be illegal is as follows: The plaintiff was working at the Jewish Hospital in Cincinnati, Ohio, and in going to and from work, she drove her automobile and left it in the parking lot provided for employees of the Jewish Hospital. The defendant had been ordered to make the monthly payments for support of their minor child through the regular established Support Bureau of the Domestic Relations Court in Batavia, Clermont County, Ohio. He testified at the trial that in direct violation of the court order to make payments to his ex-wife for the support of his

minor child through the regular established channels, he was in the habit of paying them directly to her and he testified that on the 20th day of May 1966, he saw her car in the parking lot of the Jewish Hospital and opened the door to the car, entered into the car and left a note for his ex-wife, stating where and when she could obtain the next support payment. This statement was denied by the plaintiff and stated that when she returned to the car, no such note was found. The defendant then testified that he saw, sticking out from underneath the cushion on the front seat, the corner of a large manila envelope; that he pulled out this envelope, opened the envelope and then determind that there were approximately 15 letters in this envelope; all addressed to Jerald A. Rooms at his Air Force Base in Idaho. He further testified that he then left these envelopes in the car, went to a phone booth and called his lawyer for advice, and he was then advised by his lawyer to take the letters that were dated prior to the filing of the divorce petition. Thereupon, he took the 4 letters on the dates shown between January 18th and February 10, 1966, and they were offered into evidence at the hearing on the motion for a new trial.

The plaintiff, Rita Sue Williams, testified that these letters were her letters that had been written to Jerald Rooms on the dates shown on the stamped envelopes but stated that she and Jerald Rooms had had a quarrel and had broken off and that he had returned these letters to her. She stated later, however, that they had become reconciled and were actually planning to be married, but this, of course, was postponed pending ruling by the court on this motion. While the court has not read these letters and does not know of the contents, if they are competent evidence, the court will, of course, read them and then pass upon the motion for a new trial, based upon any any material evidence that might be contained in the letters. However, if they are not competent evidence, the contents of the letters are immaterial.

The court upon reviewing the circumstances of which these letters are obtained and after making a careful study of the law as it exists in Ohio, relative to the use of illegally seized documents, believes that these are not competent evidence and will exclude them. The basis for the exclusion is as follows: The automobile from which these letters were obtained, was the private individual automobile of Rita Sue Williams and that

there is no question that Elwood M. Williams had no permission to enter said automobile and no right to enter said automobile and when he did enter the automobile, he had no right to remove or take any property therefrom. Inasmuch as this happening took place in Hamilton County, Ohio, it is not in the province of this court to determine whether or not any criminal procedure for larceny should be filed against him. The question of the use of illegally seized documents has been recently before the Supreme Court of the United States and in particular, in the case of *Mapp* v. *Ohio*, which, in the opinion of this court, establishes the principle of exclusion of evidence, illegally seized in violation of the United States Constitution. This case is a criminal case and the question of its applicability to this doctrine to civil cases is one on which there is very little case law. This court will review briefly some of the proceedings that have developed in Ohio in respect to this doctrine. The doctrine of exclusion of evidence, which is illegally seized, is described as the exclusionary rule, the Federal Rule and seemingly is in contradiction to the established common law rule. Various states have adopted various rulings on this question and the state of Ohio has, itself vacillated on the ruling as is shown by the following cases: The case of *Nicholas* v. *City of Cleveland*, 125 Ohio St., page 474, states in the 5th syllabus that a trial court on a motion to suppress the evidence that "such motion should be sustained by the trial court, and the evidence, so illegally obtained should be suppressed and not used for the incrimination of the accused," this, however, was later overruled by the Supreme Court in the case of *State* v. *Lindway*, which is reported in 131 Ohio St., page 166. The 5th syllabus of that case states in substance that the motion to exclude illegally obtained evidence should be denied and held that the court need not concern itself with a collateral issue as to how the evidence was procured and the court in this case specifically overruled the 5th syllabus of the *Nicholas* v. *City of Cleveland*.

In the case of *State* v. *Mapp*, as was originally heard by the Supreme Court of Ohio, as reported in 170 Ohio St., page 427, in syllabus 2, it held that a conviction may be valid even though evidence was introduced which was seized during an unlawful search of the defendant's home and followed the decision in the case of *State* v. *Lindway*. This case, however, was overruled by

the Supreme Court of the United States in the now famous case of *Mapp* v. *Ohio*, which was reported in 367 U. S. at page 634. Also reported in 86 Ohio Law Abs., page 513. It is interesting to note that in this case, while the case is a criminal case, the one and only syllabus, is very broad and does not seemingly make a distinction between a civil and criminal case. The syllabus reads as follows: "Evidence obtained by illegal searches and seizures in violation of the United States Constitution is inadmissible in a state court." This opinion which is written by Justice Clark, outlines the history of the development of this doctrine and bases his opinion upon the 4th Amendment to the Federal Constitution as made applicable by the 14th Amendment. It is not necessary for this court to review the various United States Court decisions set out in this opinion; suffice it to say that the court established the exclusionary rule as being an essential part of both the 4th and 14th Amendments. Justice Black in his concurring opinion, states that he felt that the 4th Amendment standing alone would not be sufficient to bar the introduction of evidence seized in violation of its provisions and bases his concurring opinion on the provisions of the 5th Amendment to the Federal Constitution which provides in substance that "no person shall be compelled in any criminal case to be a witness against himself," and, of course, if it is necessary to read the provisions of the 5th Amendment to the Federal Constitution and to this rule, it would obviously apply only to criminal, rather than both criminal and civil procedures. This court will adopt the reasoning set out in Justice Clark's opinion and will therefore hold that it is not necessary that the 5th Amendment of the Federal Constitution be concerned in arriving at its decision.

Practically all of the cases interpreting these sections are based upon the criminal cases and it is surprising how few, if any, civil cases are directly in point. The Supreme Court of the United States in the closest type of case would prohibit the use of unlawfully seized evidence in a case of forfeiture; this being the case of one *1958 Plymouth* v. *Commonwealth of Pennsylvania*, reported in 380 U. S., page 693, and while they did refer to the forfeiture proceedings as a quasi criminal in character, it was recognized that it was a type of a civil case. According to recent newspaper reports, in connection with the

Senator Dodd hearing before the Senate Ethics Committee, it was ruled that documents illegally seized at "great risk" by his former aid, James Boyd, were not admissible in evidence. In connection with the recent publicity given to wire tapping throughout this country, it seems important that a decision in connection with the use of this type of evidence in civil cases be made.

The court has discussed the Amendments to the Federal Constitution and will now like to call attention also to the provisions of the Constitution of the State of Ohio. It would not be improper to quote both of these Amendments. Amendment No. 4 of the Constitution reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

A similar provision of the Ohio Constitution is Article I, paragraph 14, which reads as follows:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

It will be noted that while both of these sections in their latter part refer to search warrants, the main part of the provisions set out that the people shall be secure in their persons, houses, their papers and their property against unreasonable search and seizure and while this is meant primarily as against an unlawful seizure by an instrumentality of government, certainly no individual has a greater power than the government itself and certainly no individual has the right to unlawfully seize any papers belonging to another person and certainly if the Federal Government or the State of Ohio is prohibited, under the provisions of these Articles of the Federal and State Constitutions, in using the illegally seized papers in a court proceedings against the individual whose property has been il-

legally seized, that an individual so seizing such property should not be granted a greater privilege.

The court will therefore hold that the provisions of Article IV, Amendments, U. S. Constitution and Article I, Section 14 of the Constitution of the State of Ohio, offer the protection to persons in civil cases against the use of property or papers seized in violation of these provisions of the Constitution. A further but less important reason seems to be that the individual stealing property, at least as against the rights of the lawful owner, has no interest therein and if he has no interest therein, would not be able to submit these papers in evidence in a court proceedings against the wishes of the lawful owner. The court having ruled that this evidence was illegally seized and should not be permitted to be offered into evidence; an entry may be drawn sustaining the motion to suppress these four (4) individual letters and inasmuch as there is no competent testimony before the court that would warrant a granting of a motion for a new trial on newly discovered evidence, this motion may be overruled.

*Motion overruled.*