**Robert S. LONDON, Appellant,**

v.

**STANDARD OIL COMPANY OF CALIFORNIA, INC., Appellee.**

No. 22892.

United States Court of Appeals Ninth Circuit.

Nov. 4, 1969.

Byrne, District Judge, dissented.

Donald Burr (argued) of Burr, Boney & Pease, Anchorage, Alaska, for appellant.

James Delaney (argued) of Delaney, Wiles, Moore & Hayes, Anchorage, Alaska, for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and BYRNE, District Judge.*

HAMLEY, Circuit Judge:

Robert S. London commenced this action on April 6, 1965 against Standard Oil Company of California, Inc. (Standard), in the Superior Court for the State of Alaska, Third Division. He sought damages in the sum of $700,000, alleging that the crash landing of his Piper Supercub airplane, as described below, was caused by defendant's negligence or breach of warranty in supplying automotive gasoline, instead of aviation gasoline, for his airplane. Standard removed the action to the United States District Court for the District of Alaska upon the ground of diversity of citizenship.

After a lengthy trial the jury returned a verdict for Standard and judgment was entered thereon. London appeals, arguing that the trial court erred in failing to give a requested instruction and in ad-

---

* The Honorable William M. Byrne, Senior United States District Judge for the Central District of California, sitting by designation.

mitting, over plaintiff's objection, a certain line of testimony.

At the oral argument in this court inquiry was made from the bench as to whether the allegations of the complaint and the petition for removal were sufficient to show that the district court had diversity jurisdiction and, if not, whether the petition for removal was susceptible of amendment in this court to overcome any deficiency.

The complaint alleged that the defendant was a corporation "organized and existing under and by virtue of the laws of the State of Delaware and doing business in the State of Alaska." The petition for removal alleged that the action is a civil action of which the district court had original jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship), and that it is an action which may be removed to the district court pursuant to 28 U.S.C. § 1441 (actions removable), " * * * in that it is a civil action wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interests or costs, and is between citizens of different states." The petition for removal, filled out on a form, contains these further allegations:

"The plaintiff___ at the time this action was commenced was/were and still is/are citizens of the State of Alaska, and the defendant___, Standard Oil Company of California, Inc. petitioner___ herein at the time this action was commenced was/were citizen___ of the State of Delaware, and defendant___ was/were or is/are not a citizen of the State of Alaska wherein this action was brought."

■ Title 28, § 1332(c) provides that for the purposes of that section and section 1441 a corporation shall be deemed a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. The allegations of the complaint and removal petition contain no recital that the company's principal place of business is in a state other than Alaska. It follows that, as the record now stands, diversity jurisdiction was not adequately alleged.

After some discussion of the matter at oral argument, this court called for and received supplemental briefs on this question. Plaintiff argues in his supplemental brief that the allegations of the complaint and petition for removal were insufficient to establish diversity of jurisdiction and that it is now too late to cure the deficiency by amendment. In its supplemental brief, Standard acknowledges the deficiency in the allegations concerning diversity jurisdiction, but contends that this may be cured by amendment pursuant to 28 U.S.C. § 1653. At the time of filing its supplemental brief, the company moved in this court for leave to amend its petition for removal, to specify that "Standard Oil Company of California has its principal place of business in California and not in Alaska."

■ This same problem concerning the ability to amend a removal in the appellate court in order to cure any deficiency in establishing diversity jurisdiction was presented at oral argument on the same day, before the same panel of judges, in Barrow Development Company, Inc. v. Fulton Insurance Company, 418 F.2d 316 (9th Cir. 1969). In an opinion filed today in that case, we have held that such a deficiency in the allegations as to diversity jurisdiction may be cured by amending the petition for removal in this court.

For the reasons stated in the *Barrow* opinion, and upon the authority of that case, we grant the motion to amend the removal petition to supply the critical jurisdictional allegations.

Turning to the merits of the appeal, the following facts are relevant. On May 26, 1964, Standard's employees mistakenly supplied London with one hundred gallons of automotive gasoline instead of the 80/87 aviation gasoline that was ordered. Without knowledge of this mistake, London placed between ten and twenty gallons of the automotive gasoline in the fuel tanks of his airplane.

The tanks had a capacity of thirty-six gallons. London flew the plane for seven and one-half hours on the automotive fuel with no difficulty, although there was some evidence of a slightly higher than normal cylinder head temperature.

On May 27, 1964, London was notified of the error. He then drained as much of the automotive gasoline from the aircraft as he could and filled the tanks with aviation fuel. At this time the eight spark plugs were removed from the plane's engine, found to be in a sooted condition, and replaced with new plugs. London then flew the plane on a forty-five minute test flight and it appeared to be operating properly. He flew the plane again on June 7 and June 8 without incident.

On June 9, 1964, London took off in the plane with one passenger on a prospecting trip. After about an hour in the air, the engine started to miss and backfire and London made an emergency landing. He examined the aircraft engine and found that the top four plugs were sooted. He replaced these with new plugs, restarted the engine, found it to be operating smoothly, and took off to resume his trip.

The engine ran well for an hour and thirty minutes and then once more began to miss and backfire. The plane lost power and crash landed. It was this crash which, according to London, caused the property damage and personal injuries for which he seeks recovery in this action.

Around July 1, 1964, London returned to the accident scene with a mechanic and made repairs on the plane. At that time London removed the eight spark plugs, examined them, and replaced the same plugs in the aircraft. London attempted to fly the plane out but it crashed on takeoff. However this accident had nothing to do with any power failure. After this second crash, the plane was hauled out by helicopter and taken to the Fairbanks Aircraft Service for repairs and for an overhaul of the engine.

While the engine was at Fairbanks Aircraft Service, London removed, examined and returned two of the eight spark plugs which were in the engine at the time of the first crash. Subsequently, on November 30, 1964, two of Standard's accident investigators visited the Fairbanks Aircraft Service shop. At their request, Jess Bachner, the owner of the shop, showed them the eight spark plugs in the engine. Bachner then marked the letters "SO" on the base of the plugs for future identification, and gave them to one of the investigators to preserve as evidence.[1] London had not given Bachner actual authority or permission to show or give the plugs to anyone.

The investigator took the plugs to Anchorage on that day and placed them in a file in Standard's office. In January, 1965, they were destroyed in a fire which consumed the Standard Oil Company office in Anchorage, their warehouses, and a storage tank. Standard was therefore unable to produce the spark plugs for examination by London's expert witness or for presentation as evidence at the trial.

Because of this, London asked the trial court to give the following instruction:

> "You are instructed that if it is shown that either party in this case has destroyed, disposed of, or otherwise suppressed evidence material to the issues before you, then this destruction, disposal or withholding of evidence raises a strong inference that the evidence was unfavorable to the party who destroyed, disposed or withheld it."

The trial court declined to give the instruction on the ground that no evidence was received indicating that the compa-

---

1. At the same time, Bachner gave the investigator a letter reading:
  "To Whom it may concern: This is to certify that the spark plugs marked with S/O on the base were removed from Lycoming Engine Model zero 320, Serial Number 13530-27, removed from Piper PA 18 N5753 Zulu."

ny had "destroyed, disposed of, or otherwise suppressed evidence material to the issues" of the case.[2]

London here argues that the trial court erred in failing to give this requested instruction. The rule upon which he relies is that an unfavorable inference may result from the unexplained failure of a party to produce documentary or other real evidence. See Evis Manufacturing Company v. F.T.C., 287 F.2d 831, 847 (9th Cir. 1961); 2 Wigmore, Evidence, §§ 285, 291 (3d Ed. 1940).

London concedes that an inference that missing evidence is unfavorable to the withholding party is not normally justified if the withholding party is unable to produce the evidence. However, he asserts that since *negligence* of the withholding party in failing to preserve the evidence will not render such an inference inappropriate,[3] the same rule should apply where the evidence is *wrongfully taken* by the withholding party and thereafter destroyed in a fire. In support of this view, London relies upon the equity maxim that "where one of two parties, both guiltless of intentional wrong, must suffer a loss, the one whose conduct, act, or omission occasions the loss must stand the consequences." [4]

It therefore appears that London does not contend that Standard employees or agents intentionally "destroyed, disposed of, or otherwise suppressed" the spark plugs in question. Nor would the evidence support such a contention, as the trial court correctly observed.

Thus, to be consistent with his present argument, London should not have sought an instruction of the kind quoted, but should have asked for an instruction that an inference adverse to the withholding party may (or must) be drawn if the withholding party wrongfully obtains possession of the evidence and thereafter, through no subsequent fault of that party, the evidence is destroyed.

But London did not ask for such an instruction, nor has he cited any authority which persuades us that such an instruction would, under any circumstances, be proper. Moreover, assuming that circumstances could be stated which would warrant such an adverse inference premised upon a wrongful taking of evidence, no such circumstances existed here.

■ Bachner, who had rightful possession of the engine, permitted a Standard investigator to take the plugs. In addition, he carefully marked each plug for identification purposes and furnished the investigator a letter, quoted in note 1, certifying their identity. The investigator testified that his purpose in taking the plugs was to have them "in our possession as evidence that the plugs were in good condition and were not fouled." Insofar as the record discloses, Standard's acquisition of the spark plugs, even if unauthorized, was for a legitimate purpose and was in no sense designed to deprive London of a fair trial.

We accordingly hold that the trial court did not err in refusing to give the requested instruction.

■ London further argues that, since the trial court did not give the requested instruction, it should at least have sustained his objection to the testimony of Ottmer T. Finney, one of Standard's investigators. This testimony was to the effect that Finney had examined the spark plugs in question and that they did not appear to be "unduly" fouled or leaded. London contends that since the

---

2. The trial court thus applied the established rule that when there is no evidence as to a particular issue, no instruction as to that issue should be given. See Brown v. Chapman, 304 F.2d 149, 154, 4 A.L.R.3d 490 (9th Cir. 1962); Mayflower Insurance Exchange v. Gilmont, 280 F.2d 13, 16 (9th Cir. 1960).

3. See Washington Gas Light Co. v. Biancaniello, 87 U.S.App.D.C. 164, 183 F.2d 982, 985 (1950).

4. For applications of this maxim, see the cases cited in 27 Am.Jur.2d, Equity, § 146, pages 682–683, notes 18–20.

spark plugs were destroyed while in the company's wrongful possession, hereby depriving him of the opportunity to present comprehensive testimony as to their appearance, and since the jury was not told that they could draw an inference therefrom adverse to the company, "fair play" required that Finney's testimony based upon such an examination be excluded.[5]

The reasons given by the trial court for overruling the objection to this testimony are quoted in the margin.[6]

We agree with the views expressed by the trial court and are of the opinion that there are no considerations of "fair play" which required exclusion of this testimony.

■ Moreover, it was London who first elicited testimony from a Standard employee about the appearance of the plugs. Prior to the trial, counsel for London took the deposition of Jerry Lewis, the other Standard investigator, who obtained the spark plugs from Fairbanks Aircraft Service. During the course of that deposition, the following colloquy occurred:

"Q What were the conditions of the plugs that you saw? A Their appearance were [sic] the same as new plugs. Q None of them were fouled? A No. Q How many did you look at? A Eight. Q None of them were fouled? A No."

As Lewis was not available to testify at the trial, counsel for London caused his deposition to be published and read to the jury. Later in the trial Lewis became personally available, and Standard called him as a witness. However, he was asked no further questions about the condition of the spark plugs. It was after Lewis had, in response to London's questions, testified as to the appearance of the plugs, that Finney's testimony to like effect, in response to questions by Standard's counsel, was received over objection.

Under the described circumstances, and even if considerations of "fair play" might otherwise have called for exclusion of Finney's testimony, the trial court correctly overruled the objection to Finney's testimony. London himself having first elicited testimony concerning the appearance of the spark plugs, the company was entitled to explore the same issue on direct and cross examination.

■ London makes some reference to the best evidence rule. Assuming that, by analogy to the best evidence rule, oral testimony concerning the appearance of the plugs would be inadmissible if the plugs were available as evidence, the fact is that they were not available. Secondary evidence is admissible when the primary evidence is unintentionally destroyed. See 4 Wigmore, Evidence, § 1198 (3d Ed. 1940).

Nor are we persuaded by London's effort to equate this oral testimony with evidence obtained as a result of an illegal search and seizure. It is not the admissibility of the missing plugs that con-

5. As authority for this view, London relies upon the equity maxim referred to above and upon cases holding that evidence wrongfully obtained should be excluded in civil cases just as evidence obtained by an illegal search and seizure is in criminal cases. See Carson v. State ex rel. Price, 221 Ga. 299, 144 S.E.2d 384 (1965); Williams v. Williams, 8 Ohio Misc. 156, 221 N.E.2d 622, 627 (1966).

6. In denying the motion for a new trial, the court said:
"The admission of defendant's testimony as to the condition of the spark plugs is neither erroneous nor prejudicial. It is uncontroverted that the spark plugs were unintentionally destroyed. Both parties wished to introduce them and so stated during trial. In their absence, under these circumstances, both parties must be allowed to offer whatever best evidence they were able to offer with respect to the spark plugs. The witnesses testified concerning the condition of the spark plugs from their own observation. They stated what they themselves had seen. It was then for the jury to weigh this testimony in the light of all other evidence, and give the evidence the value, if any, that it found it to have."

cerns us, but the admissibility of oral testimony as to their appearance. That testimony was based upon perfectly proper examination of the plugs at the Fairbanks Aircraft Service shop.

Affirmed.

BYRNE, District Judge (dissenting): I respectfully dissent.

An allegation that an individual is a citizen of a certain state is an allegation of fact. However, a corporation is a creature of statute and its citizenship can be established only by compliance with the statutes. It follows that an allegation that a corporation is a citizen of a certain state is not an allegation of fact, but a mere conclusion of law. For the purpose of federal jurisdiction, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business". (28 U.S.C. § 1332(c))

"The prerequisites to the exercise of jurisdiction are specifically defined * * *. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. *He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing.*" McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1935). (emphasis added)

In its petition for removal of this state court litigation to the federal District Court, Standard Oil stated plaintiff was a citizen of Alaska and that it was a citizen of Delaware and not a citizen of Alaska. The plaintiff is an individual and the allegation that he is a citizen of Alaska is adequate, but there are no facts alleged as to the citizenship of defendant—only the legal conclusion that the defendant is a citizen of Delaware. This is not a defective allegation which may be cured by amendment as authorized by 28 U.S.C. § 1653, but a complete omission of any facts to establish diversity of citizenship or any other federal

jurisdiction as required by 28 U.S.C. § 1446.

Upon the authority of the cases and statutes cited in my dissenting opinion in Barrow Development Company, Inc. v. Fulton Insurance Company, 418 F.2d 316 (9th Cir.), I would remand the case to the district court and direct that court to remand it to the state court.