Peggy B. JONAS and Samuel Keith
Jonas, Plaintiffs-Appellants,

v.

The CITY OF ATLANTA,
Defendant-Appellee.

Peggy B. JONAS and Samuel Keith
Jonas, Plaintiffs-Appellants,

v.

Martha E. WALLACE, "John" f. n. u.
Satterfield, S. A. Cumberworth, W. A.
Wallace, Defendants-Appellees.

No. 80–7070.

United States Court of Appeals,
Fifth Circuit.
Unit B

June 12, 1981.

Herbert Shafer, Atlanta, Ga., for plaintiffs-appellants.

Ferrin Y. Mathews, James A. Barnett, Atlanta, Ga., for defendant-appellee.

Before HILL and FRANK M. JOHNSON, Jr., Circuit Judges, and SCOTT *, District Judge.

FRANK M. JOHNSON, Jr., Circuit Judge:

Peggy Jonas and her son Samuel Jonas brought these Section 1983 suits against the

---

* District Judge of the Middle District of Florida, sitting by designation.

City of Atlanta and City of Atlanta police officers Martha E. Wallace, "John" f.n.u. Satterfield, S. A. Cumberworth, and W. A. Wallace. From adverse judgments, plaintiffs appeal.

The following is a fair summary of the evidence presented at trial. At about one a. m. on February 19, 1978, defendant Satterfield, acting in his capacity as a City of Atlanta police officer, was patrolling the downtown Atlanta area. He received a radio call informing him that an attempted robbery of a pedestrian had taken place at International and Williams Streets. He proceeded to the intersection, where he was met by a black male named Tony Love. Love told defendant Satterfield that he had attempted to buy some marijuana from two white males. One of the males pulled a gun and demanded Love's money, but Love managed to escape from the men without property loss. As reflected on defendant Satterfield's crime report, Love described the men as "one white male with long blond hair, and thin, in his twenties" and "one white male, clean-cut, and twenties." The car was described as a 1968 or 1969 white station wagon with wood grain down the sides. Defendant Satterfield caused a lookout to be broadcast over the police radio for the suspects and the vehicle.

At approximately one a. m. the same morning, nineteen-year-old plaintiff Samuel Jonas drove two University of Georgia students, Samuel Srochi and Jefferson Singer, to the Greyhound Bus Terminal in downtown Atlanta, where they planned to board a bus to Athens, Georgia. Samuel Jonas returned home. While waiting for the bus, Srochi discovered that he did not have his wallet and was without funds to buy a ticket. Srochi called the home of plaintiffs and asked Samuel Jonas to locate the wallet. Since the last bus to Athens had departed, Srochi asked Samuel Jonas to pick Singer and him up at the bus terminal.

With Samuel Jonas at his home was Jeffrey Haskel, a University of Florida student. Young Jonas asked Haskel to pick up Srochi and Singer. Because his car was low on gasoline Haskel drove Peggy Jonas' green 1973 station wagon. He picked up the two students and proceeded toward the Jonas' residence. As he was driving down the interstate a police car with flashing lights pulled in front of him, another police car pulled behind him, and a third police car pulled up beside him. Haskel pulled over to the side of the road and stopped the car. Several officers emerged;[1] according to Haskel, at least four officers had guns drawn.

The officers asked Haskel for his driver's license. When he could not produce a license, the officers told the three men to get out of the car, which they did. After searching the three and finding no weapons or contraband, the officers asked Haskel who owned the car; Haskel replied the Jonases of 854 West Pace Ferry Road. Defendant Satterfield remarked that Haskel did not meet the description of the suspect they were seeking. Nevertheless, Satterfield continued to question Haskel, and in response to his question whether Jonas was a white male with long stringy hair, Haskel replied in the affirmative. Defendant Satterfield radioed for a police car to check the area around the bus station and try to locate Love, the alleged robbery victim.

Meanwhile, without a warrant the other officers searched the car, finding and seizing a quantity of marijuana. Defendants contend that the marijuana was in plain view; plaintiffs dispute this allegation. Although plaintiffs requested an evidentiary hearing on this issue, the trial court did not hold a hearing. Thus, the record does not contain a basis for determining whether the warrantless search and seizure were justified.[2]

---

1. Plaintiffs presented testimony that eight to ten officers participated in the stop; defendants offered no testimony on the issue. Four or five police cars were present when the young men were stopped.

2. Although the record is not clear, it appears that the evidence of contraband was suppressed on Fourth Amendment grounds in the state court.

After searching the car, the officers searched the young men again. This time they found marijuana in Singer's coat pocket.

The officers detained Haskel, Srochi, and Singer in separate police cars for about an hour. During this time defendant Satterfield called the City Wide Wrecker Service to have Ms. Jonas' car impounded. Also during this time period some other officers brought a black man to the cars. Singer overheard the black man say, "These are not the ones." The three students were taken to Atlanta City Jail where they were booked on charges of possession of a controlled substance. Haskel was also charged with not having a driver's license. All the charges against Haskel, Srochi, and Singer were subsequently dismissed.

Before the three students were transported to jail, defendant Satterfield received word that Love could not be located. He then radioed for a police accompaniment[3] in the area of the West Pace Ferry Road address supplied by Haskel. With defendant W. A. Wallace he proceeded to the area where they met defendants Cumberworth and Martha Wallace. Defendants Satterfield and W. A. Wallace advised defendants Cumberworth and Martha Wallace of the earlier occurrences of the evening. The four officers went to the Jonas' residence. Satterfield testified that he only wanted to investigate the alleged robbery and that he would not have made an arrest without a warrant. Martha Wallace, however, testified that she was under the impression that the officers would act as a group, that if Samuel Jonas was at the residence he would be arrested, and that "whoever had knowledge of the hold-up would be the one doing the actual arresting."

Because the officers were apprehensive about Jonas being armed, when they arrived at the house defendants Satterfield and W. A. Wallace stayed at the front of the house while defendants Martha Wallace and Cumberworth went to the rear. On the way to the back of the house, defendant Cumberworth observed Samuel Jonas and his sixteen-year-old sister Sarah running past a large window toward the back of the house. Officer Cumberworth informed the other officers of her observation. Defendant Cumberworth then saw Samuel and Sarah Jonas come out a side door. As she approached them, she told them to stop.

A discussion and a scuffle, the facts of which are disputed, ensued. Samuel Jonas was arrested by Martha Wallace, who at that time told him he was being arrested for armed robbery but who at trial testified that she arrested him for assaulting a police officer. The officers searched him, finding marijuana and a quantity of white powder. He was placed in the back seat of one of the police cars.

The officers then questioned Sarah Jonas. They asked her if they could come inside since it was cold outside, and Sarah allowed them to enter the house. She told the officers that her mother was in bed with the flu. Sarah testified that she wanted to wake her mother, but the officers indicated that there was no need. On the other hand, the officers testified that Sarah was at all times free to wake her mother and that she consented to a search of the house. The officers searched several rooms in the house, finding nothing of evidentiary value. Sarah then decided that her mother needed to be present.

Once awakened, Peggy Jonas immediately got out of bed and went into the room where the officers were standing. Defendant Satterfield told her that Samuel had been arrested for armed robbery and that they were holding three of his friends. The police officers subsequently took Samuel Jonas to the downtown station and officially charged him with assault. After spending the night in jail, he was released on bond. All charges were dismissed the next day.

---

**3.** The Jonas' home was located outside the police zone that Satterfield routinely patrolled. As a courtesy to the officers of the zone in which the Jonas' home was located and in accordance with City of Atlanta police custom, Satterfield requested that officers from that zone accompany him.

After the charges against Samuel Jonas were dismissed, Peggy Jonas requested that her station wagon be returned to her. Employees of City Wide Wrecker Service, which had a contract to impound cars for the City of Atlanta, told her that the car was being held until the cases against Haskel, Srochi, and Singer were resolved. Subsequently, on October 26, 1978, over eight months after impoundment, Ms. Jonas received a notice from City Wide Wrecker Service informing her that she could obtain her car upon paying a $970 storage fee. On October 31, 1978, Ms. Jonas' attorney sought to obtain release of the vehicle. City Wide Wrecker Service refused to release it unless Ms. Jonas paid the storage fee.

Peggy and Samuel Jonas sued under 42 U.S.C. § 1983, alleging that defendants Satterfield, Cumberworth, Martha Wallace, and W. A. Wallace, acting under color of state law, searched, seized and arrested Samuel Jonas without a warrant and without probable cause; that Martha Wallace beat Samuel Jonas about the face with a flashlight; that defendants conducted a warrantless search of Peggy Jonas' home; and that defendants maliciously prosecuted Samuel Jonas. Peggy Jonas subsequently amended the complaint to include a claim for damages for the conversion of her automobile. On the basis of information gathered during discovery, plaintiffs instituted a similar suit against the City of Atlanta, alleging that the actions of the police officers were taken with the consent, approval, and ratification of the City of Atlanta. The cases were consolidated.

Prior to trial plaintiffs filed a motion for an order suppressing the use at trial of any evidence unlawfully seized from the automobile and from Samuel Jonas. The trial court denied the motion without prejudice to its being raised at trial. When the evidence was offered at trial, however, the

trial court overruled plaintiffs' objection and admitted the evidence. The jury returned a verdict for defendants on all claims except Peggy Jonas' claim for the illegal search of her home. The trial court entered judgment in accordance with the verdict on all the claims except the claim for the illegal search of her home. On that claim the trial court granted defendants' motion for judgment notwithstanding the verdict.

Plaintiffs appeal, alleging (1) that the district court erred by granting defendants' motion for judgment n. o. v. on Peggy Jonas' claim concerning the search of her home; (2) that the district court erred by refusing to grant judgment to Peggy Jonas on her claim concerning the conversion of her automobile; (3) that the district court erred in overruling plaintiffs' objections to the closing arguments of defense counsel; (4) that the district court erred by charging the jury that evidence a person is attempting to flee may be probative of guilt; and (5) that the district court erred by admitting evidence seized during the allegedly unconstitutional searches of Peggy Jonas' car and Samuel Jonas' person. We agree with most of plaintiffs' contentions and accordingly reverse.

■ First, as to Ms. Jonas' claim for the search of her home, we agree that the district court erred in holding that, as a matter of law, Sarah Jonas voluntarily consented to the search of her mother's home.[4] Voluntary consent is a question of fact to be determined from the totality of the circumstances and, in evaluating the circumstances, "account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth v. Busta-monte*, 412 U.S. 218, 229, 93 S.Ct. 2041, 2049, 36 L.Ed.2d 854 (1973). At trial Sarah Jonas testified that she wanted to wake her mother, but the officers repeatedly declined

4. Ms. Jonas also contends that Sarah was legally incapable of waiving Ms. Jonas' Fourth Amendment rights. Although we observe that defendants did not introduce evidence tending to prove that Sarah and her mother exercised mutual control over the premises, *see United*

States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *United States v. Baldwin*, 644 F.2d 381, 382–383 (1981), our determination that the evidence supports the jury verdict renders discussion of this issue unnecessary.

to let her. Sarah further testified that she did not think she had any choice in the matter; in her words, "they seemed to me like they were going to do it whether I said so or not." In light of the early morning hour of the search and Sarah's tender age, the jury could have reasonably concluded that Sarah did not consent to the search. Because Ms. Jonas presented sufficient evidence upon which the jury could have properly found a verdict for her, the judgment n. o. v. was improperly granted.[5]  *See, e. g., Martin v. Chesebrough-Pond's, Inc.,* 614 F.2d 498 (5th Cir. 1980); *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969).

■ Second, we also agree with Ms. Jonas that the district court erred by refusing to grant judgment in favor of Ms. Jonas on her claim against defendants Satterfield and the City of Atlanta for conversion of her automobile. Defendants' sole defense was that since the car was used to transport contraband it was subject to forfeiture proceedings under Georgia Code Ann. § 42–813.1. Assuming without deciding that the seizure of the contraband was constitutional,[6] the mere fact that the car was subject to forfeiture proceedings under Ga.Code Ann. § 42–813.1 will not insulate defendants from liability if defendants detained the car or caused the car to be detained without instituting forfeiture proceedings. The Georgia statute requires the arresting officer to seize and condemn any vehicle used in transporting drugs and, within ten days, to report the seizure to the solicitor of the court having jurisdiction in the county where the seizure was made. Within ten days of the receipt of this notice, the solicitor must institute condemnation proceedings. At trial defendants did not introduce any evidence that they had fulfilled these statutory requirements; on appeal defendants admit that forfeiture proceedings were never instituted, asserting that Ms. Jonas could have obtained release of her automobile by paying its storage costs. The uncontroverted evidence is that defendants seized the car and caused it to be detained, but did not institute forfeiture proceedings by timely reporting the seizure.[7]  Having failed to institute forfeiture proceedings as required by the Georgia statute, defendants, as a matter of law, had no authority to cause the vehicle to be detained. Be-

---

5. In violation of the court's instructions the foreperson brought an encyclopedia containing the Fourth Amendment into the jury room. Defendants seek to justify the judgment n. o. v. on the ground that the judgment n. o. v. was a proper method for the district court to deal with the infraction. Although defendants argued to the district court that this juror misconduct justified a judgment n. o. v. or a new trial, the trial court did not base its order on this ground. In light of the nature of the violation, the fact that defense counsel was aware of the infraction before the verdict was rendered but did not call it to the court's attention or otherwise object until after the verdict was announced, and the subsequent inquiry by the trial court into the misconduct, the failure of the district court to enter a judgment n. o. v. or grant a new trial on the ground of juror misconduct cannot be said to be an abuse of discretion. *See generally Tillman v. United States,* 406 F.2d 930 (5th Cir.) (denial of new trial on grounds of juror misconduct reversible only for abuse of trial court's discretion), *vacated and remanded on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969).

6. Ms. Jonas also contends that the automobile could not be the subject of forfeiture proceedings because the contraband seized from the car was found as the result of an illegal search.

If she is correct in her contention that the search of the automobile was in violation of the Fourth Amendment, she would clearly be entitled to a directed verdict. *See One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Even though Ms. Jonas filed a motion to suppress evidence of the contraband found in the car and therefore sought a finding of whether the search of her car was unconstitutional, the district court did not hold a hearing on the motion and thus did not make the requisite findings of fact. Because we hold that defendants asserted no legally cognizable defense, a remand for pertinent fact findings is unnecessary.

7. Plaintiffs introduced a letter dated September 13, 1978, from an assistant district attorney of Fulton County to City Wide Wrecker Service which informed City Wide that, although Ms. Jonas' car was impounded and held for drug violations, timely written reports were not received by the district attorney's office and thus that office was unable to file condemnation petitions within the statutory period. Defendants did not introduce any evidence tending to prove compliance with the notification requirement or any other requirement of the statute.

cause no legally cognizable defense was advanced at trial, Ms. Jonas was entitled to a directed verdict, and the failure of the trial court to enter judgment in her favor is reversible error.

■ Third, we agree with plaintiffs' contention that the district court erroneously overruled their objections to defense counsel's closing arguments. In so holding, we recognize that a trial court is generally better able than an appellate court to evaluate the prejudice flowing from improper jury arguments; accordingly, a trial court's denial of a motion for new trial based on improper statements will be reversed only for abuse of discretion. *E. g., Crown Colony Distributors, Inc. v. United States Fire Insurance Co.,* 510 F.2d 544 (5th Cir. 1975); *Har-Pen Truck Lines, Inc. v. Mills,* 378 F.2d 705 (5th Cir. 1967). In this case we find that the trial court abused its discretion by failing to take steps to remedy the prejudicial effect of numerous improper statements made by defense counsel in his closing arguments. Among the comments we find improper are defense counsel's statements or intimations that at least ten lids of marijuana were found in the searches; that Samuel Jonas and his friends were dealing in marijuana and in furtherance of their business had transported marijuana from Florida; that narcotics were found in the automobile; and that Jonas had in fact perpetrated the attempted robbery of Mr. Love. Other than introducing the evidence that some marijuana was found during the searches, defendants did not introduce evidence tending to support the above remarks. The highly prejudicial effect of

these comments, taken cumulatively, is obvious. A new trial must be held.

■ Fourth, we agree with plaintiffs that the trial court improperly charged the jury that evidence one is attempting to flee may be evidence of guilt.[8] While it may be true that the charge contained an accurate statement of the law, the charge was not relevant to the defense offered. Defendants did not assert that they arrested Samuel Jonas for attempted robbery in the good-faith belief that he was guilty of that offense and that they could legally arrest him without a warrant.[9] Rather, they contended that they arrested Samuel Jonas for assault, not attempted robbery. Because the charge was not relevant to any of the determinations to be made by the jury, it should not have been given. *See, e. g., Foster v. Ford Motor Co.,* 621 F.2d 715 (5th Cir. 1980) (jury should be instructed on a legal theory only if the evidence adduced at trial is sufficient to justify such an instruction).

Last, we turn to plaintiffs' contention that the contraband found in the automobile and on Jonas and his friend was seized as a result of an unlawful search and seizure in violation of the Fourth Amendment and therefore all evidence of the contraband should have been suppressed. Assuming that the searches were violative of the Fourth Amendment, evidence of the contraband would have surely been suppressed if this had been a criminal trial. *See, e. g., Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). But suppression of unconstitutionally seized evidence in a civil case between private parties is a different

---

**8.** The district court charged the jury that evidence that a party fled or was attempting to flee is admissible as an admission of guilt or responsibility; that is it is a circumstance which may be considered with other evidence as tending to prove guilt. The defendants say that they had a reasonable belief that Plaintiff Samuel Keith Jonas was attempting to flee and thus had reasonable grounds to believe that he might be guilty of the crime for which they were investigating.

**9.** The trial court's charge indicated that defendants asserted a good-faith defense to the claim

concerning the arrest of Samuel Jonas. A review of the evidence offered at trial and defense counsel's arguments, however, convinces us that defendants did not assert a good-faith defense as that term is generally used in Section 1983 actions. *See Rodriguez v. Jones,* 473 F.2d 599 (5th Cir.), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973); *Bivens v. Six Unknown Named Agents,* 456 F.2d 1339 (2d Cir. 1972). Rather, defendants claimed that Samuel Jonas was arrested for an assault committed in the presence of an officer and thus no warrant was needed to legally arrest young Jonas.

matter, and we conclude that under the facts of this case the district court did not commit reversible error by admitting the evidence.

■ We start with the proposition that the seizure of evidence in violation of the Fourth Amendment does not always preclude use of the evidence at a civil trial.[10] Indeed, whether the exclusionary rule may ever bar the introduction of evidence in a civil trial is uncertain. "In the complex and turbulent history of the rule, the [Supreme] Court never has applied it to exclude evidence from a civil proceeding, state or federal." *United States v. Janis,* 428 U.S. 433, 447, 96 S.Ct. 3021, 3028–3029, 49 L.Ed.2d 1046 (1976) (footnote omitted).

■ In deciding whether the exclusionary rule applies in a proceeding, the Supreme Court has emphasized the deterrent purpose of the rule. But even though suppression of unconstitutionally seized evidence would serve to deter similar action in the future, suppression of the evidence in every trial for every purpose is not required. For the rule to be applied, the deterrent benefit of exclusion must outweigh the detriment to the public interest in providing factfinders with all relevant testimony. *E. g., Alderman v. United States,* 394 U.S. 165, 175, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969). In many cases the deterrent purpose is served by merely precluding the government's use in its case-in-chief of any fruits of an illegal search at a criminal trial. Thus, the government is not precluded from using illegally seized evidence on cross-examination to impeach a defendant, *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); nor is the government precluded from asking grand jury witnesses questions based on evidence obtained from an unlawful search and seizure, *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Similarly, the federal government is allowed to use, in a civil tax proceeding, evidence illegally seized by state criminal law enforcement officers, *United States v. Janis, supra,* 428 U.S. 433 (1976). Finally, in a situation not yet presented to the Supreme Court, at least one circuit has ruled that an insurer in a suit for payment of fire insurance proceeds is not precluded from using evidence of arson found by state and local officials during an illegal search. *Honeycutt v. Aetna Insurance Co.,* 510 F.2d 340 (7th Cir. 1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975). But in a proceeding for forfeiture of an article used in violation of the criminal law, the balance is struck in favor of the person from whom the evidence is illegally seized. Because forfeiture is clearly a penalty for transgressing the criminal laws, exclusion of illegally seized evidence is thought to obtain the same deterrent effect as exclusion in a criminal proceeding.[11] *One 1958*

---

10. In contrast to the federal courts, many state courts have applied state statutes or constitutional provisions or have exercised their general supervisory powers to prohibit the use of illegally obtained evidence in a suit between two private parties. *See Kuzmiak v. Flowers,* 580 S.W.2d 226 (Ky.1979) (court assumed exclusionary rule applies in wrongful death action, but found that evidence was lawfully seized by state officers); *McNitt v. Citco Drilling Co.,* 397 Mich. 384, 245 N.W.2d 18 (1976) (court in wrongful death action suppressed evidence of blood alcohol test that was not obtained in conformity with statutory requirements); *Kassner v. Fremont Mut. Ins. Co.,* 47 Mich. App. 264, 209 N.W.2d 490 (1973) (following established Michigan law, court in a civil action by insured to collect on an insurance policy suppressed evidence of arson illegally obtained by state fire marshals); *Markham v. Markham,* 272 So.2d 813 (Fla.1973) (in a divorce action,

court suppressed evidence obtained by husband who illegally tapped wife's telephone); *Williams v. Williams,* 8 Ohio Misc. 156, 221 N.E.2d 622 (C.P. Clermont County 1966) (in a divorce action, court suppressed evidence stolen by husband from wife).

11. Similarly, in a quasi-criminal case or a case in which the government is a party, the balance may be struck in favor of excluding illegally obtained evidence. *See, e. g., Standard Oil Co. v. Iowa,* 408 F.2d 1171 (8th Cir. 1969) (exclusion required in treble action antitrust action); *Knoll Associates, Inc. γ. FTC,* 397 F.2d 530 (7th Cir. 1968) (documents stolen by private citizen with the knowledge of the government may not be used by the government in a FTC proceeding); *Carlisle v. State ex rel. Trammell,* 276 Ala. 436, 163 So.2d 596 (1964) (suppression of illegally obtained evidence required in a proceeding to abate a gambling nuisance; decision

*Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).

█ If an illegal search and seizure did occur in the instant case, we feel that the desired deterrent effect has been achieved by the suppression of that evidence in state criminal proceedings. The criminal enforcement process, which is the concern and duty of defendants, has been thwarted. Given the deterrence obtained by, in effect, precluding criminal prosecution, we think that the additional marginal deterrence provided in this case by disallowing the use of the evidence at this civil trial would not outweigh the societal cost of excluding relevant evidence and decreasing the possibility of obtaining accurate factual findings.[12]

The cause is REVERSED and REMANDED for proceedings consistent with this opinion.

rested in part on state statute); *Carson v. State*, 221 Ga. 299, 144 S.E.2d 384 (1965) (evidence seized pursuant to deficient warrant must be excluded in a proceeding to abate public nuisance); *People v. Moore*, 69 Cal.2d 674, 446 P.2d 800, 72 Cal.Rptr. 800 (1968) (illegally seized evidence inadmissible in narcotic addict commitment proceeding); *Parish of Jefferson v. Bayou Landing Ltd., Inc.*, 350 So.2d 158 (La.1977) (illegally obtained evidence not admissible in action to enjoin future obscenity nuisance); *State v. Spoke Committee, Univ. Center*, 270 N.W.2d 339 (N.D.1978) (illegally obtained evidence not admissible in action to enjoin future showing of obscene film). *But see Webster v. Redmond*, 599 F.2d 793 (7th Cir. 1979), *cert. denied*, 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980) (in deciding to suspend teacher, school board may consider illegally seized evidence); *United States v. Paepke*, 550 F.2d 385 (7th Cir. 1977) (evidence illegally seized by state officers not suppressed in federal tax case); *NLRB v. South Bay Daily Breeze*, 415 F.2d 360 (9th Cir. 1969), *cert. denied*, 397 U.S. 915, 90 S.Ct. 919, 25 L.Ed.2d 96 (1970) (when government did not instigate private search, evidence held admissible); *Lamartiniere v. Dept. of Emp. Sec.*, 372 So.2d 690 (La.App.), *cert. denied*, 375 So.2d 945 (La.1979) (illegally seized evidence admitted in proceeding to determine validity of claim for unemployment compensation payments).

12. While we find no reversible error in the admission of the evidence in this case, we wish to make clear that the evidence was not offered to prove a good-faith defense. *See* note 9, *supra*. We express grave reservations about whether, as a matter of law, police officers who illegally obtain evidence may use that evidence to establish a good-faith defense to a Section 1983 action.