RONALD EDGER SANDERS, Plaintiff-Appellant, *v.* POINT AFTER, INC., a corporation; GILBERT SARAGOSSA; and FRANCIS G. APOLIONA, Defendants-Appellees, and THI HAWAII INC., d/b/a HAWAIIAN REGENT HOTEL; HAYES GUARD SERVICE, INC., a corporation, Defendants

NO. 6725

MARCH 25, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY HAYASHI, C.J.

Appeal is taken from a jury verdict adverse to the appellant in a bifurcated personal injury action against the Point After, Inc., discotheque and two of its employees. Appellant Ronald Edger Sanders (Sanders) cites five errors allegedly committed by the trial court that warrant reversal of the verdict: (1) whether the court erred in denying appellant's motion for continuance and setting the matter for trial on the sole question of liability, reserving the question of damages for a later trial; (2) whether the court erred in barring admission of two of appellant's depositions for failure to give reasonable notice; (3) whether it was error to deny admission of medical testimony pertaining to plaintiff's injuries where the only question before the court was defendants' liability; (4) whether there was sufficient evidence to support appellees' motion for directed verdict on appellant's claim for punitive damages; and (5) whether the court erred in its selection of the jury's verdict form.

Appellant brought this action on January 13, 1976, alleging that on Christmas day, December 25, 1975, while visiting the Point After, Inc., discotheque, he was beaten by two of its employees, Appellees

Francis G. Apoliona (Apoliona) and Gilbert Saragossa (Saragossa) and other unidentifiable defendants. On April 7, 1977, the week prior to the trial date, appellant moved for a six-month continuance on the basis that his injuries had not stabilized. The trial court, instead, denied the continuance and bifurcated the action, trying only the question of the appellees' liability, and reserved the question of damages until such time as his injuries stabilized, should liability be found.

It appeared from the testimony at trial that on the night in question, Sanders, along with other employees of the Capricorn Jewelry Store, attended a Christmas party hosted by their employer, Gilbert Lai, at the Yong Sing Restaurant on Alakea Street. Dinner and drinks were served and the employees were given Christmas bonuses in red Chinese envelopes. Also in attendance at the party were visiting guests of Mr. Lai from Malaysia, Mr. & Mrs. Yoke Loon Wong and their son, David. Afterwards, Mr. Lai asked Sanders to take the Wongs out on the town at his expense. Sanders and two other employees, Lynn Nagamatsu and Motoko Wallace, together with the Wongs and their son, David, went to the Point After, Inc., discotheque in the Hawaiian Regent Hotel in Waikiki for dancing and drinking, arriving at about 11:00 p.m. They were seated and Sanders ordered and paid for a round of drinks. All went well until the third round when the waitress claimed Sanders owed her $4.00 for the last drinks ordered. Sanders alleged that he paid for the last drinks with a one-hundred-dollar bill given him as a Christmas bonus and taken from the red envelopes he and the other employees had received earlier in the evening. From this point on the evidence is in substantial conflict. Sanders testified that in response to the waitress' charges, he agreed to talk with the bouncers or hosts. At that point, according to Sanders, Apoliona and Saragossa seized him by the arms and one of them kneed him in the groin. They then carried him out of the disco and another employee grabbed his arm. Sanders then testified that while he was in pain from being kneed in the groin, Apoliona and Saragossa beat and kicked him about the head and stomach, rendering him unconscious. When he came to, Motoko Wallace, a member of the party, assisted him down the stairs. In pain, he fell down in the bushes fronting Kalakaua Avenue. Spotted by beat police officers, he told them he had been beaten and was taken by the police officers back into the hotel to identify his

assailants. Upon sighting Apoliona, he became agitated, accused him of the assault, and demanded that the police officers arrest him. When the officers explained their inability to make the arrest under the circumstances, Sanders became enraged and in frustration smashed his hand through the plate glass window, causing serious injury to himself. He was then taken to Queen's Medical Center for treatment. He filed criminal charges against Apoliona and Saragossa. Apoliona was never served, and the charges against Saragossa were dropped when Sanders was unable to positively identify him as the assailant.

Saragossa and Apoliona denied that either of them had struck Sanders or kneed him in the groin. Saragossa, a host at the Point After, Inc., discotheque, testified that he escorted Sanders outside the disco after he became threatening and abusive following the waitress' allegation. Apoliona testified that he followed Saragossa in escorting Sanders from the disco and never touched him.

Barbara Schiffers' testimony was generally in accord with that of Saragossa and Apoliona. Charles Kauhola, a Hayes Guard Service, Inc., employee on duty at the Hawaiian Regent Hotel named in Sanders' amended complaint and subsequently dismissed, testified that in response to the commotion, he followed another Hayes Guard Service, Inc., employee, Sakamoto, to the disco where he observed Sanders on the ground holding his groin and complaining of being kicked there. Apoliona, he said, was standing next to him. Sakamoto testified that he first saw Sanders standing outside the disco talking with Lt. Pola. He was called away on an errand and returned 10-15 minutes later and saw Sanders on the floor in a semiconscious state. He did not see any Point After, Inc., employees around him, nor was Lt. Pola there at that time. Lt. Pola denied having observed any incident. Sakamoto was able to ascertain that a "scuffle" had taken place. He and Officer Diess, along with the hotel's assistant manager, escorted Sanders off the premises onto Kalakaua Avenue where Sanders flagged a police officer. Sakamoto did not see Sanders holding his groin area but testified that Sanders fell into the bushes when the officer came. Sanders was then brought back into the hotel security office while he waited for the ambulance which had apparently been called for by the police. While waiting there, Sakamoto testified that Sanders was belligerent and abusive prior to smashing the plate glass window. Honolulu Police Depart-

ment Officers Jackson and Silverstein both testified to seeing Sanders outside the hotel in distress and complaining of having been beaten and kicked in the groin. Officer Silverstein helped Sanders out of the bushes but did not observe any bruises or cuts on his face. Motoko Wallace, a member of the Sanders' party, testified that Sanders and the waitress got into a dispute over payment for the last set of drinks ordered by the Sanders' party. As a result, "two guys" came over and "scooped him up." She did not see anyone knee him in the groin. She followed them and through the glass door saw a "bunch of guys" surrounding Sanders on the floor. When she went out into the hall, she found Sanders on the ground holding his crotch and the guys surrounding him. The identity of the guys surrounding Sanders and allegedly beating him was not clearly established by Mrs. Wallace. Lynn Nagamatsu testified that Apoliona and Saragossa dragged Sanders out of the disco against his will. Outside the disco she saw Sanders being punched to the ground by persons she could not clearly identify until security guards stopped the fight. Neither Wallace nor Nagamatsu saw Sanders being kneed in the groin by either Apoliona or Saragossa while in the disco. The jury returned a verdict finding that the appellees were not liable for the injuries sustained by the appellant.

Appellant finds error in a number of procedural decisions rendered by the trial court judge. Appellant's first contention of error is in the trial court's decision to deny his motion for continuance and bifurcate the trial. Trial in this matter was set for April 12, 1977. On April 7, 1977, the appellant moved for a six-month continuance on the basis that the medical condition of the appellant had not stabilized to a point where the extent of his medical damages were ascertainable. Apparently, he had undergone surgery on his nose and sinuses and was still undergoing treatment. Appellant's physician felt that a six-month continuance would be beneficial. Judge Shintaku denied the continuance and, instead, ordered trial to proceed on the question of liability only, pursuant to HRCP Rule 42(b).

Rule 42(b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving

inviolate the right of trial by jury. . . .

It is a well-established principle, in this jurisdiction and elsewhere, that the granting or denial of a continuance is a matter that is addressed to the sound discretion of the trial court and is not subject to reversal on appeal absent a showing of abuse. *Yamashiro v. Costa,* 26 Haw. 54 (1921); *Irwin v. Lyman,* 29 Haw. 434 (1926); *In Re Adoption of Jane Doe,* 42 Haw. 250 (1957). Rule 42(b), HRCP, is identical to the federal rule and the matter of separation has had considerable treatment in the treatises and the federal courts. As is true with the matter of continuance, the decision to separate is within the sound discretion of the trial court and is properly granted where the court concludes that such act will prevent undue delay and otherwise promote the interests of justice. *See, e.g., Bedser v. Horton Motor Lines,* 122 F.2d 406 (C.A. 4th, 1941); *Hosie v. Chicago and Northwestern Railing Co.,* 282 F.2d 639 (C.A. 7th, 1960); *cert. denied,* 365 U.S. 814, 81 S. Ct. 695 (1961); *Moss v. Associated Transport, Inc.,* 344 F.2d 23 (C.A. 6th, 1965); *Nettles v. General Accident Fire and Life Assurance Corp.,* 234 F.2d 243 (C.A. 5th, 1956). Appellant relies heavily on the decision in *United Air Lines v. Weiner,* 286 F.2d 302 (C.A. 9th, 1961), wherein the court of appeals held that separate trials on the issues of liability and damages were inappropriate in an action involving consolidation of actions involving multiple defendants, *some* of whom were seeking exemplary damages where the two questions were so intertwined that separation could not be had without injustice to the parties. Such is not the case in the matter before us. Appellant has suffered no prejudice to his cause by having the question of the appellees' liability determined at this juncture. All the witnesses had been subpoenaed and all the parties were ready to begin. The questions of the appellees' liability and the amount of damages were clearly divisible. Accordingly, we find no abuse in the court's decision to deny appellant's motion for continuance and bifurcate the trial.

Depositions were taken of all the members of the appellant's party, including the Wongs who had returned to Malaysia by the time of the trial. At trial, the court denied admission of the Wongs' depositions on the basis that the notice given was unreasonable and that the objection to their admission was properly raised at trial. Appellant contends that the court erred in so doing. Appellant's amended complaint of January 21, 1977 named as defendants,

Point After, Inc., Apoliona, and Saragossa. Davis, the attorney for the Point After, Inc., answered five days later. Apoliona and Saragossa had not yet retained counsel but appellant's counsel agreed to extend their time to answer on Davis' request. The agreement provided that Apoliona and Saragossa had until March 11, 1976 to answer. On February 26, appellant's counsel gave personal notice to Davis that he was going to depose the Wongs on the following day, February 27, as he had learned they were about to leave Honolulu. He *mailed* notice to Apoliona and Saragossa on the same day. Davis was present at the deposition on behalf of the Point After, Inc. Apoliona and Saragossa were not present nor were they represented by counsel. Appellant's counsel sought to read the depositions into evidence at trial. Counsel for Apoliona and Saragossa objected to their admission arguing that Apoliona and Saragossa had not received reasonable notice nor had they been present or represented by counsel at the time the depositions were taken. The trial court denied their admission. Appellant argues that Apoliona and Saragossa are estopped from arguing unreasonable notice because of their failure to obtain counsel within the usual pleading time and that their counsel's failure to object to the filing of the depositions in April constituted a waiver under HRCP Rule 32(d).

Rule 32(d)   Effect of Errors and Irregularities in Depositions.

(1) *As to Notice.*   All errors and irregularities in the notice for taking deposition are waived unless written objection is promptly served upon the party giving the notice.

Rule 32(d), HRCP, like Rule 42(b), is identical to the federal rule so that its treatment in the treatises and federal courts is, likewise, instructive for our purposes. While a failure to make timely objection to defective notice operates as a waiver,

. . . where reasonable notice is not given and the adverse party has no real opportunity to move for a protective order and does not appear at the time and place stated in the notice, the want of reasonable notice may be raised by objection to the *admission of the deposition at the trial.* [emphasis added] 4A Moore's Federal Practice ¶ 30.57 at 30-96, 30-97 (2d. ed. 1980).

*See also, Mims v. Central Manufacturers' Mutual Insurance Company,* 178 F.2d 56 (C.A. 5th, 1949), wherein the court of appeals denied the admission of depositions on the ground that the notice given was unreasonable. The appellant in *Mims v. Central Manufacturers'*

*Mutual Insurance Company, supra,* had raised his objection at trial, as is being done here. We find the rule in MOORE's FEDERAL PRACTICE and the decision in *Mims v. Central Manufacturers' Mutual Insurance Company, supra,* controlling for our purposes. At the time the notice of the depositions was given, Apoliona and Saragossa were without counsel and had not filed responsive pleadings. Notice of the taking of the depositions was *mailed* to them personally on the day before the depositions were to be taken. They did not attend the depositions as they did not *receive* notice until after the 27th. Under the circumstances, it is clear that reasonable notice was not given in this case, and the trial court correctly denied the admission of the Wongs' depositions into evidence.

Appellant cites as error the trial court's decision to exclude the testimony of Dr. Carl Lum, who examined the appellant on the 29th of December, three days after the incident. The court's rationale in this decision is made clearer by the transcript (beginning at line 3, p. 309, through line 20, p. 310).

(The following proceedings were held in chambers.)

MR. SMITH: There are two matters I would like to bring up. First, as to medical testimony I think I should make an offer of proof on, since it has been indicated that the issue of whether Mr. Sanders was struck in the face is important in any later trial as to damages. It has been my intention to call Carl H. Lum, which was the physician that Mr. Sanders saw on December 29, about two days after he got out of the ER room at Queen's and who if called would testify, based on his records, to Mr. Sanders' groin injuries, bruises around the thighs and legs and the bruises, ecchymosis over his eyes and bruises on his face. He is under subpoena. He is prepared to so testify. And I would make that offer of proof for the purpose of establishing the facts of the injuries to the face.

MR. SCHUTTER: Off the record.

(Off the record discussion.)

MR. SCHUTTER: I will put on the record now that when the motion for continuance came on in a bifurcated trial, it was suggested and agreed to by all counsel present — and the Court agreed that there would be no medical testimony but that the plaintiff would be permitted to testify in general to injuries he claimed to have suffered, and the medical testimony would not

be relevant in this trial, since damages had been reserved. Obviously, we would strenuously object to any testimony by a doctor since that would require us calling a number of doctors to the contrary.

THE COURT: One thing now, Mr. Schutter. I agree that you guys, you could put in a medical record.

MR. SCHUTTER: We have no objection to Queen's emergency records on the day in question.

MR. SMITH: Would you object also to Dr. Lum's records?

MR. SCHUTTER: Obviously. That is four days later.

MR. SMITH: It is the 26th. He was in Queen's the early a.m. The 29th is just three days later.

MR. SCHUTTER: Three days later.

MR. SMITH: I am sure the doctor will say it takes time for bruises to show. It takes a few days to ripen.

MR. SCHUTTER: Now, Mr. Smith, there was blood streaming from his face, and the only issue is whether he was ever hit in the face.

THE COURT: Okay. That is the offer of proof.

Having bifurcated the proceedings, the court did not err in excluding the testimony of a doctor who examined the appellant three days after the incident.

At the close of the evidence, the court granted the appellees' motion for directed verdict and dismissed his claim for punitive damages. In accordance with the supreme court decision in *Kealoha v. Halawa Plantation,* 24 Haw. 579 (1918); and *Lauer v. Young Men's Christian Association of Honolulu,* 57 Haw. 390, 557 P.2d 1334 (1976), the trial court found there was no evidence that Appellee Point After, Inc., had ratified any wilful misconduct on the part of its employee Apoliona. However, since the jury returned a verdict of no liability that is being affirmed by this court, the question is moot. This court will not decide moot questions. *International Market Place v. Liza, Inc.,* 1 Haw. App. 491, 620 P.2d 765 (1980).

Appellant's last point of error concerns the court's decision to use the appellees' special verdict form instead of the one he favored. Appellant's contentions in this regard are based on speculation; however, in any event, the argument is without merit as appellant failed to include his proposed verdict form in the trial record. This court cannot consider matters that are not a part of the record. *Orso*

*v. City & County of Honolulu,* 55 Haw. 37, 514 P.2d 859 (1973); *Pickering v. State,* 57 Haw. 405, 557 P.2d 125 (1976).

Accordingly, judgment is affirmed.

*Robert A. Smith* for plaintiff-appellant.

*Walter Davis* for defendant-appellee, Point After, Inc.

*Judith Pavey (David C. Schutter* on the brief) for defendants-appellees Gilbert Saragossa and Francis Apoliona.