626 P.2d 1175 (1981)
Onasai TANUVASA, Plaintiff-Appellee,
v.
CITY AND COUNTY OF HONOLULU, a municipal corporation, and Officer David Lam, Defendants-Appellants.
No. 6891.
Intermediate Court of Appeals of Hawaii.
April 16, 1981.
Reconsideration Denied May 5, 1981.
Certiorari Granted May 26, 1981.
*1178 David C. Schutter, Honolulu, for plaintiff-appellee.
Stanley Young, Deputy Corp. Counsel, Honolulu, for City.
Wayne A. Matsuura, Burgess & Matsuura, Waianae, for Lam.
Before HAYASHI, C.J., and PADGETT and BURNS, JJ.
PADGETT, Judge.
Appellants City and County of Honolulu and David Lam appeal from a judgment below awarding appellee $250,000 general damages against the City and County of Honolulu and $6,000 punitive damages against Officer Lam.
The lawsuit arose out of an incident occurring on the evening of January 3, 1975. Appellee and six friends were gathered in the Kalihi YMCA parking lot talking. Appellee and one other were in his car, the other five were gathered around it. According to the testimony, they were discussing a planned camping trip to take place later that evening. They were under observation by two Honolulu police officers who were across a chainlink fence watching them. These two officers had come there because they had heard what they suspected to be gunshots somewhere in the vicinity. They observed no indication of any illegal activity on the part of the seven persons in the parking lot. Sergeant Dempsey had earlier testified that they observed the seven from five to seven minutes, but on trial, changed that to 30 seconds, at which point Appellant Lam, another police officer, drove up. According to the witnesses, Officer Lam stopped his car, hung up his microphone and came out of the car, drawn gun in one hand and flashlight in another, and ordered the seven up against the nearby wall, using vile language. Officer Lam denies the use of vile language or that his gun was drawn. He also claims that as he walked toward the car, he observed spent shell casings scattered in the area.
Appellee was apparently slow to obey Appellant Lam's order to get up against the "fucking wall" and inquired what was going on. According to Officer Lam, as appellee was moving away from the car and towards the wall, he turned around and pushed Appellant Lam one time with sufficient force to cause him to take a step backwards toward the car. Appellant Lam thereupon proceeded to beat appellee about the head and face with a two-foot long, extremely heavy metal flashlight using what the witnesses described as a full-arm swing. Appellee and the other witnesses deny that at any time appellee touched the officer or offered any resistance except to raise his hand in an unsuccessful attempt to ward off the blows. The evidence is conflicting as to how many times the officer struck the appellee but the pictures in evidence reveal one laceration on the face and two on the head, widely separated one from the other and Appellant Lam on cross-examination, confronted with the pictures, admitted to more than one blow.
The officers who were on the other side of the chainlink fence testified that they did not see the beating as they left almost immediately upon Appellant Lam's appearance on the scene to drive around to the parking lot. Other policemen apparently arrived very quickly also, at which point, according to the evidence, the beating stopped. Appellee, bleeding profusely, was permitted to sit on the ground until an ambulance arrived and the attendants took care of him. He was removed to Queen's Emergency Center where he was treated and his lacerations stitched. He did not spend the night in the hospital but after *1179 treatment went home. He saw Dr. Bergmanis about his injuries five days later and a number of times during the ensuing ten months after which the visits ceased. He showed no neurological deficit but complained of headaches, dizziness and blurry vision. According to appellee, he was still suffering the same on a frequent basis, perhaps every other day, at the time of the trial. In answer to a hypothetical question, Dr. Bergmanis related his headaches and dizziness to the incident in question and opined that if they had continued on the basis claimed over the two-year period from the accident to the time of the trial, that they were probably permanent.
Although there was some testimony about appellee's ability to operate a truck being impaired, no evidence of loss of wages or medical expenses as a result of the incident was adduced.
Appellee had had a brilliant record as a high school football player. He had played football at the University of Oregon and University of Hawaii while in college, but largely as a substitute, with his problems arising, at least in part, from injuries including head injuries, during the course thereof. Expert testimony was adduced that appellee, if in shape and motivated, stood a good chance of playing professional football in the bottom 25% of the National Football League or in the World or Canadian Leagues.
The 1974 University of Hawaii football season ended in mid-December, 1974. The incident in question occurred two or three weeks later. No evidence was adduced indicating that because of the incident any National Football League team which might have picked appellee in the draft which ensued in February of 1975 did not do so. Nor did the appellee testify specifically that he did not attempt to try out as a free agent in any professional football league because of the injuries involved in this case. There is testimony from which it might be inferred that appellee felt he was unable to get in shape to play professional football because of his continuing symptoms. The only thing approaching a medical linkup of the injuries with the ability to play football occurred on the cross-examination of the medical expert retained by the City to examine the appellee. He testified that he told the appellee that even though his EEG was normal and there was no evidence of brain damage, he was a college student and had a lot more than other people had, and had been injured so many times that he shouldn't play football anymore. The jury returned a verdict against the City and County for general damages in the amount of $250,000 and against the Officer for punitive damages in the amount of $6,000. Judgment was entered, motions for new trial and judgment non obstante veredicto were denied and this appeal followed.

SUPREME COURT RULE 3(b)
Before taking up the contentions of error raised in the briefs of the two appellants, we think a few words on the subject of the form of the briefs are appropriate.
As to Appellant Lam, we previously dismissed an appeal taken by his counsel, in a case for a different client, for failure to include a jurisdictional statement as required by Rule 3(b)(2) of the Rules of the Supreme Court and of this court. The Supreme Court granted certiorari in that case and as of this date, as far as we know, that matter is still pending. This time, counsel totally omits any statement of the points upon which the appellant intends to rely as required by Rule 3(b)(5). Moreover, while he states the text of some, but not all, of the instructions complained of in the body of his brief (albeit, not entirely accurately in all cases), he neglects to set forth the objections to the giving or refusal of instructions urged at trial as required by the Rule. This failure to follow the rules warrants dismissal of the appeal.
Since the case involves an award of punitive damages against Appellant Lam, which, in itself, makes it somewhat out of the ordinary, we are reluctant to dismiss the appeal simply because his counsel didn't follow the plain and simple terms of a written rule. We are, however, at a loss to envision how we are going to capture counsel's *1180 attention for a sufficient span of time to drive home the points that the rules are there to be obeyed and that they do apply to this particular counsel. We hope what we have said on this subject is sufficient to impress counsel that he is not immune from the rules. If it is not, and he, for a third time, chooses to ignore Rule 3(b), sanctions will follow.
With respect to the Appellant City and County of Honolulu, its Assignment of Error number B of its brief, does not comply with the requirements of Rule 3(b)(5) because that Rule requires:
When the point involves the admission or rejection of evidence, there shall be included a quotation of the grounds urged at the trial for the objection, and the full substance of evidence admitted or rejected.
The same is true of points F and G, but otherwise the Appellant City and County's brief is in conformance with the rules.
We turn then to a consideration of the points raised on the appeals despite the rule violations previously discussed. Two points are common to both briefs, the granting of the motion in limine to suppress the evidence of the gun and the marijuana allegedly found on a search of appellee's car after the incident in question and permitting the showing of movies of appellee as a high school football player. We affirm the court's action in both respects.

THE SUPPRESSION OF THE GUN AND MARIJUANA EVIDENCE
With respect to the suppression of the alleged gun and marijuana evidence,[1] the argument for its admission is that it would have strengthened the credibility of Appellant Lam's contention that he used only reasonable force in the assault in question and detract from the credibility of appellee and his witnesses.
The court below granted the motion in limine and suppressed the evidence on the subject, basically on the ground that, considering its obvious prejudicial effect upon appellee's case and the remoteness of the relevancy, it would exercise its discretion to suppress the evidence. It thus avoided having to pass upon whether the search was a violation of the Fourth Amendment and whether if so, the government and the police officer could take advantage of the fruits of an unconstitutional search in a civil case.
Appellant Lam, at the time he beat appellee with his heavy flashlight, knew nothing of the existence of a gun and of marijuana in appellee's car. He testified fully as to what he knew at the time and the jury heard that testimony. Thus, the jury knew what Lam knew when he administered the beating. Therefore, the contention that somehow the introduction of the evidence would bolster his credibility as to his state of mind in administering the beating, is without foundation.
As to the argument concerning Appellee Tanuvasa's state of mind, the contention is that the jury might have believed that he shoved the officer (which he denied) had they known of the gun and marijuana in his car, the theory being that he shoved the officer in order to prevent him from searching the car. The problem with this is the officer wasn't searching the car, he was between Tanuvasa and the car when the alleged shoving took place and thus, the shoving was towards, not away from the car. Even if that logical hurdle could be overcome, what Tanusava's state of mind might have been in shoving the officer is completely irrelevant since, even by the officer's testimony, what appellee did, could not, to a reasonable mind, justify, as a matter of self-defense, the character of the attack upon him by Appellant Lam which followed.
The third argument made is that had the jury known of the gun in the car, it might have disbelieved the testimony of Tanuvasa's witnesses that they knew nothing *1181 about the shooting and that if their credibility was thus impeached, the jury might have disbelieved all of their testimony. The argument is extremely remote and very speculative. When the reasons for admitting the evidence are weighed against their obvious prejudicial effect, we cannot but conclude that the court below did not abuse its discretion in refusing to allow evidence about the gun and the marijuana. Indeed, it is difficult to conceive of anything that could have been more prejudicial to the appellee in the circumstances of this case than the admission of this remote and speculative evidence.
We add that, as far as we're concerned, on the record before us, the search of the car violated the appellee's Fourth Amendment rights. No one saw a gun fired by anyone. The officers who heard the reports were ambivalent as to whether what they heard were in fact firecracker explosions or gunfire and they did not know where the explosions were coming from. No one observed any violation of law in progress; no one reported that the appellee had violated any statute. Apparently, at the point the search took place, the appellee had been beaten about the head and then removed from the scene. To permit the City and its agent to take advantage of the violation of appellee's constitutional rights to introduce remote and speculative but highly prejudicial evidence would be a travesty of justice. The weight of authority favors the suppression of evidence obtained by the defendants by an unconstitutional search, even in civil cases. Pizzarello v. U.S., 408 F.2d 579 (2d Cir.1969); Kassner v. Fremont Mutual Ins. Co., 47 Mich. App. 264, 209 N.W.2d 490 (1973); Williams v. Williams, 8 Ohio Misc. 156, 221 N.E.2d 622 (1966). See also Powell v. Zuckert, 366 F.2d 634 (D.C. Cir.1966). Compare, U.S. v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Contra, Governing Board of the Mountain View School District of Los Angeles v. Metcalf, 36 Cal. App.3d 546, 111 Cal. Rptr. 724 (1974).

THE FOOTBALL FILMS
As to the introduction of the films of appellee's high school football career, there was a claim of limitation of activities due to the injury, and evidence in support thereof. The evidence introduced was relevant to show appellee as he was before the incident in question and the court below did not abuse its discretion in permitting the jury to view the same.
We will now consider the other claims of error, turning first to those of Appellant Lam and secondly, to those of the City and County of Honolulu.

THE DENIAL OF A CONTINUANCE
Appellant Lam contends that the court erred in denying his motion for a continuance of the trial. This contention is utterly without merit. Appellant Lam was represented from the inception of the suit until a few weeks before trial by the attorneys for the City and County of Honolulu. The City and County sometime in 1977 found itself being sued again for a later altercation between Appellant Lam, as a police officer and another citizen. The City indicated, at a hearing before the trial judge on August 16, 1977, that it might be filing a cross-claim in that action and it perceived that as a result of that, there might be some conflict of interest in its attorneys continuing to represent Appellant Lam in this case. Appellant's present counsel appeared at that hearing. Appellee's counsel was not present. The court indicated that it would permit the substitution of counsel but that it would not allow any continuance as a result thereof.
In due course, the court was presented with a substitution which it signed. Some days later appellant's counsel moved for a continuance on the ground that he didn't have sufficient time to get ready for trial. The court denied the motion. Its denial was no abuse of discretion. Sapp v. Wong, 62 Haw. ___, 609 P.2d 137 (1980); In Re Adoption of Jane Doe, 42 Haw. 250 (1957); Sanders v. Point After, Inc., 2 Haw. App. ___, 626 P.2d 193 (1981). Appellant Lam had had ample opportunity for discovery while the attorneys for the City and County were representing him. There is no showing *1182 that any failure to conduct discovery on their part arose out of any conflict of interest between the City and County and Appellant Lam. Appellant chose to present the court with the substitution of counsel in face of an express warning that that could not form the basis for a continuance. In the circumstances, the urging of this ground for error is frivolous.

THE GIVING OF PLAINTIFF'S INSTRUCTIONS 6 AND 10
Appellant Lam complains of the giving of Plaintiff's Jury Instruction Nos. 6 and 10 which are general damage instructions dealing with the alleged loss of an opportunity to play professional football as one element thereof. No jury award of general damages was sought or made against Appellant Lam and there consequently was no prejudice to his case in the giving of those instructions.

THE DENIAL OF DEFENDANT CITY'S INSTRUCTIONS 6 AND 8
Appellant Lam also complains of the refusal to give Appellant City and County's proposed Instruction No. 6, which reads:
A police officer is not liable for injuries inflicted by him in the use of reasonably necessary force to preserve the peace and maintain order or to overcome resistance to his authority. That a police officer's privilege to use force is not limited to that amount of force necessary to protect himself but extends to that amount of force necessary to enable him to perform his duty.
Even if we assume the instruction correctly stated the law, it was properly refused because there was no evidence to support it. There is no evidence that the force used in this case was reasonably necessary to preserve peace and maintain order or overcome resistance to the police officer's authority. On the contrary, in this case, even if the officer's statement that he had been shoved one step backwards by appellee were to be believed, the force used by him was that of repeated full-arm swings of a 2-foot long, very heavy metal flashlight, beating the appellee about the face and head even though appellee was not resisting. No reasonable man could conclude that that force was reasonably necessary to maintain peace and order or to overcome resistance to his authority.
Appellant Lam complains of the refusal to give the City's proposed Instruction No. 8 which read:
You are instructed that an officer in attempting to detain or apprehend one who is suspected of committing a misdemeanor has a right to resist an attack made upon him, and being rightfully there and not an aggressor, he may use such reasonable force as is necessary to accomplish to [sic] purpose.
Actually, the instruction (which was offered by the City not by Appellant Lam) read "that purpose" not "to purpose". The threshold problem with this instruction is, of course, that there is, again, absolutely no evidence to support the contention that Appellant Lam was attempting to detain or apprehend appellee because he suspected him of committing a misdemeanor. He did not so testify and there was nothing in the evidence to justify such a suspicion even if the instruction were otherwise good law, which is doubtful. There had been a report of gunfire somewhere in the vicinity. He saw spent casings within 35 feet of appellee's car. (There were other cars in the parking lot and six other people besides appellee present.) Those facts standing only alone would not constitutionally justify an arrest. The alleged touching of Appellant Lam by appellee would not qualify as an assault under the Hawaii Penal Code. It might qualify as a petty misdemeanor of harassment under § 711-1106, Hawaii Revised Statutes. However, there is no testimony of any resistance after the alleged shoving, thus, if the alleged shoving took place, there is no testimony that thereafter, there was any attack upon the police officer in the course of an attempt by him to detain or apprehend the appellee for the petty misdemeanor of harassment. The instruction was properly refused because the facts did not support it.
*1183 We might add that adequate instructions were given with respect to the force which a police officer could use in his self-defense.

THE REFUSAL OF A DIRECTED VERDICT
Appellant Lam argues that the trial court erred in refusing to grant his motion for a directed verdict at the close of all the evidence. Suffice to say there was more than ample evidence from the physical facts of the beating alone, as well as other evidence, to submit to the jury the question of whether Appellant Lam acted with malice. This contention is frivolous.

THE FAILURE TO INSTRUCT THAT MALICE MUST BE SHOWN BY CLEAR AND CONVINCING EVIDENCE
The next argument of Appellant Lam is that there was plain error in instructing the jury that it need only find that appellee had established his case by a preponderance of the evidence in order to find Appellant Lam liable. The problem with this, leaving aside the appellant's failure to quote the instruction at any point in his brief, is that no objection to the instruction was made by appellant. Not only that, but apparently the instruction complained of is Appellant City's Instruction No. 13. Appellant Lam offered no instructions at all, choosing instead to go along with the City's position. Instruction 13 was objected to by the appellee, according to the record, as to the last sentence which was a modification to the typed instruction offered and did not bear upon the point in question. In the circumstances of this case, particularly in view of the egregious attack upon appellee by Appellant Lam, we will not disregard the error which Appellant Lam invited. Accordingly, his claim that the court erred by denying him a new trial on this point is denied.

THE CLAIM OF PREJUDICIAL CONDUCT OF COUNSEL
Appellant Lam's last two points are claims that his motion for a new trial should have been granted because the appellee's counsel accused him of dishonesty and because of bickering and displays between appellee's counsel and counsel for the City and County. Frankly, a reading of the transcript indicates that all counsel in the trial were involved in breaches of decorum and that the court had a continuing problem with all of them which it tried to, and it seems to us, did control. We see nothing in the record to indicate any prejudice to any party as a result of the conduct of counsel. Certainly the size of the punitive damages award does not, given the circumstances, indicate prejudice.
As far as the conduct of Appellant Lam's counsel goes however, on repeated instances he did things which, if done by a more experienced attorney, could well be attributed to a lack of honesty. The court below, in one instance, pointed this out to him at sidebar. Nevertheless, it was willing to give him the benefit of the doubt, as are we, but that his conduct provoked many of the outbursts of which he complains, cannot be doubted. We find no error.
With respect to Appellant Lam, therefore, the judgment below is affirmed.

THE CITY'S APPEAL
Turning to the City's appeal, we find the various points of claimed error raised by the City to be without merit with one exception.
What is labeled Assignment of Error C reads as follows:
The trial court erred in not granting the Defendants a new trial and/or remittitur on the grounds that the injuries sustained by Plaintiff were not the proximate cause of the loss of an opportunity to play professional football.
While the City has failed to appeal from the giving of Plaintiff's Instruction Nos. 6 and 10 which dealt with the claim that he "will be prevented from pursuing" a professional football career, it did properly object to them at trial on the ground that the opportunity to play professional football, as indicated by the evidence, was speculative and remote.
*1184 Plaintiff's Instruction No. 10, given by the court over objection, stated with respect to the matter of plaintiff's claim for deprivation of an opportunity to play professional football:
If you find from the evidence that the Plaintiff was preparing for, or training for, a professional football career, and if you find from the evidence that the Plaintiff possesses the ability and talent to pursue such a career, and if you further find from the evidence that as a direct and proximate result of the occurrence in question the Plaintiff will be prevented from pursuing such career, you may take this into consideration in awarding damages to the Plaintiff.
There was evidence that appellee was preparing for or training for a professional football career. There was evidence admitted, without objection, that the appellee possessed the ability and talent to pursue such a career. There was no evidence that as a direct and proximate result of the occurrence in question, he was prevented from pursuing such a career. Appellee, himself, testified, after stating that he was experiencing headaches, dizziness and trouble with concentrating, perhaps every other day, as a result of the incident in question:
Q. Since the incident, have you given any thought to a professional football career?
A. In my mind, I was just wishing and hoping some way I could ever get that chance to play.
Q. Do you feel now that you could play professional football with these injuries?
A. I feel the odds are against me.
The only other evidence connecting the injuries to playing football came in the cross-examination of Dr. Won, the City's expert, when he testified:
Q. And at the conclusion of your examination of Mr. Tanuvasa to determine his injuries from the incident of January 3rd, 1975, did you or did you not tell him that he'd better not consider ever playing football again for the rest of his life?
A. But it was under these circumstances.
Q. Doctor, you will have every opportunity to explain it. Would you answer the question first.
A. I don't think I put it in those terms at all. I did not say that he should never play football. Not at all. It happened like this. After I finished examining him, I had seen through the record that he had many other injuries, and I told him, I said, "Even though your EEG is normal, there's no evidence of permanent brain damage," I said, "you're a college student and you have much more than lot of other people have. I don't think you should play football any more." I said, "You've been injured so many times." I said, "You're young yet. You have a lot going for you. You don't have to play football any more. I don't think you should. That's just using common sense; right? Using common sense. You've had these many injuries and, you know, you're still healthy. Why go injure yourself some more?" And on that basis I told him, "I don't think you should play football."
The rule in Hawaii is that the fact of damage, proximately resulting from a tort, must be established with reasonable certainty. That done, the amount of damages is left to the jury to be determined on such evidence as is available. Coney v. Lihue Plantation Co., Ltd., 39 Haw. 129 (1951).
In our case, the court below, without objection, gave the City and County's Instruction No. 9, modified, reading as follows:
You are not permitted to award a party speculative damages, which means compensation for future loss or harm which, although possible, is conjectural or not reasonably certain.
However, should you determine that the Plaintiff is entitled to recover you should compensate him for loss or harm which is reasonably probable to be suffered by him in the future as a proximate result of the injury in question.
*1185 Given the test of reasonable probability agreed to by the parties, we can find no evidence from which the jury could find that it was reasonably probable that "as a direct and proximate result of the occurrence in question the Plaintiff will be prevented from pursuing such career" i.e. as a professional football player.
The law is clear that it is error to instruct a jury on a state of facts not supported or warranted by the evidence adduced at trial. Gelber v. Moana Hotel, 49 Haw. 327, 417 P.2d 638 (1966) and such an error is, of course, presumptively harmful unless it appears from the record as a whole that the error was not prejudicial. Gelber v. Moana Hotel, supra; City and County of Honolulu v. Bennett, 57 Haw. 195, 552 P.2d 1380 (1976); Turner v. Willis, 59 Haw. 319, 582 P.2d 710 (1978).
The language we have previously quoted from Plaintiff's Instruction No. 10 was erroneous because it was not supported by the evidence. Certainly, in view of the size of the verdict for general damages as compared with the injuries here, we cannot, on the record as a whole, say that the effect of giving the erroneous instruction was not prejudicial.
Appellee argues, however, the evidence was susceptible of a construction by the jury that as a matter of reasonable probability, appellee had lost the chance to try to become a professional football player and that he could be properly compensated for that chance.
Appellee's argument is, however, untenable for three reasons: First, the instruction, as worded, states that as a result of the accident, not that appellee lost the chance to try to pursue a football career but rather that he was prevented from pursuing a football career. While there is some evidence that appellee's chances for pursuing a football career were diminished, there is none that he was prevented from trying to pursue or from pursuing a football career.
Secondly, appellee's argument assumes that the jury would construe the instruction as indicating that the damage was the loss of a chance at the career but the instruction, as worded, is equally susceptible of the construction that what was being claimed was the loss of a career.
The question on review of instructions is not whether they were technically correct but whether appellant could have suffered prejudice on their account.
Estate of Lorenzo, 61 Haw. ___, ___, 602 P.2d 521 (1979). Instructions should be free of ambiguity. 75 Am.Jur.2d Trial § 613 (1974). Appellee is in effect arguing that the instruction was ambiguous. If so, he should not have suggested it in that form.
Thirdly, the great weight of American authority is still to the effect that the fact of damage must be proved with reasonable certainty. 22 Am.Jur.2d Damages § 172 (1965); McCormick on Damages, § 26 (1965). See, e.g. King Logging Company, Inc. v. Scalzo, 16 Wash. App. 918, 561 P.2d 206 (1977); Douglas Reservoirs Water Uses Ass'n v. Cross, 569 P.2d 1280 (Wyo.S.Ct. 1977); Howarth v. Ostergaard, 30 Utah 2d 183, 515 P.2d 442 (1973). Certainly, that appears to be the law in Hawaii to date. Coney v. Lihue Plantation Co., Ltd., supra.
Accordingly, the giving of Plaintiff's Instruction No. 10 was error and the City's motion for a new trial should have been granted with respect to the issue of general damages. Thus, we are not called on to analyze whether Plaintiff's Instruction No. 6 was also erroneous. We, therefore, affirm the judgment as to Appellant David Lam and as to the liability of the Appellant City and County of Honolulu and reverse and remand for a new trial against the Appellant City and County of Honolulu on the issue of general damages only.
Affirmed in part, reversed in part and remanded for further proceedings consistent herewith.
NOTES
[1] According to the City's counsel at oral argument, by the time of trial, the gun and the marijuana (as well as the spent shell casings allegedly observed by Appellant Lam at the scene and later recovered by the police) seem to have been destroyed.