MAKANI DEVELOPMENT COMPANY, LIMITED, a Hawaii corporation, Plaintiff-Appellee, *v.* JON RILEY STAHL, NORIKO ASANO STAHL (formerly known as NORIKO ASANO BELL), and STAHL, ASANO, SHIGETOMI ASSOCIATES, Defendants-Appellees, and BANK OF HAWAII, Intervenor

NO. 8366

(CIVIL NO. 57614)

SEPTEMBER 26, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In a foreclosure of an agreement of sale, applicant-appellant[1] Lawrence I. Weisman (Weisman) appeals from the June 19, 1981 order directing the co-commissioners to make certain disbursements from a deposit on a bid made on Weisman's behalf at a public auction sale. Weisman urges that the court below erred: (1) in assessing attorney's fees and delay damages against him to be paid from the deposit to plaintiff Makani Development Company, Ltd. (Makani); (2) in denying his motion to award him attorney's fees from Jon Riley Stahl, Noriko Asano Stahl, and Stahl, Asano, Shigetomi Associates (collectively referred to as Stahls); and (3) in ordering the commissioner to hold $25,000 of the deposit in escrow pending disposition of the proceedings. We affirm.

The facts pertinent to this appeal are as follows: On April 6, 1979, Makani filed an action against Stahls to cancel or foreclose an agreement of sale of the Makani Kai Hotel.

After numerous delays, the court, on October 20, 1980, entered an interlocutory decree of foreclosure and appointed

---

[1] Weisman, although not a party, was a purchaser at a judicial sale and is deemed to be a party with standing to appeal. *See* 47 Am. Jur. 2d *Judicial Sales* § 223 (1969); *Honolulu Federal Savings & Loan Ass'n v. Pao,* 4 Haw. App. 478, 668 P.2d 50 (1983). The nomenclature "applicant" is Weisman's.

two co-commissioners to proceed with the foreclosure sale. On January 23, 1981, a public auction was conducted and Makani, who was the only bidder, purchased the property for $2,120,000. On February 5, 1981, the court orally confirmed the sale.

However, on February 20 and 23, 1981, pursuant to representations by the Stahls and the co-commissioners that additional bidders were interested in purchasing the property, the court entertained new bids, but again orally confirmed the sale to Makani on both occasions. On February 25, 1981, the court entertained further bids. This time Jon Stahl, purportedly on behalf of Weisman, William Dodd on behalf of Makani, and Dwayne Kurisu on behalf of Petty Corporation, submitted bids for the property. Jon Stahl entered a high bid of $2,650,000 and deposited $200,000 with the co-commissioners to be forfeited if Weisman failed to close within 45 days of the sale.

On March 6, 1981, Makani filed a motion to disqualify Weisman as a purchaser charging that Weisman had contacted Makani and had indicated that he wished to settle the case with them by purchasing the property for $1.8 million, by making an additional $100,000 down payment and paying the remainder in installments at 6% interest. Weisman filed a memorandum in opposition to the motion to disqualify stating that he was prepared to close the sale, but that he would join in the motion to disqualify if his deposit, and interest earned thereon, were returned. At the hearing on March 12, 1981, the court orally denied Makani's motion.[2]

On March 22, 1981, Weisman and co-counsel, John Williams, withdrew as attorneys for the Stahls, and Paul Maki, Esq., replaced them. Weisman claimed in his withdrawal that he had been relieved of duties as of March 15, 1981.

On March 23, 1981, Weisman filed a motion asking the court to eliminate any payment to Stahls from the proceeds of the sale or, in the alternative, to allow him to withdraw his bid and the deposit. Weisman charged in his motion that Jon Stahl

---

[2] The record does not reveal any written order.

had exceeded his authority when he entered the bid on Weisman's behalf, and that Jon Stahl had used a sham bidder to raise the selling price. Weisman alleged he was prepared to pay the amount due to Makani, together with Makani's costs and fees, but was not willing to pay anything more than that, which would go to Stahls.

At the March 27, 1981 hearing on Weisman's motion, the court held that Weisman would be allowed to withdraw his bid, but that Weisman would be assessed damages and expenses for the delay occasioned by his actions. The court also confirmed the sale to Makani at its original bid of $2,120,000. A written order was filed on April 3, 1981.

On May 12, 1981, Weisman filed a motion to assess attorney's fees against the Stahls for Weisman's services. After hearing, the court orally denied the motion but no written order was ever filed.

On May 19, 1981, Makani filed a motion for entry of deficiency judgment against Stahls and for an order directing disbursement of deposit. On June 19, 1981, after hearing, the court entered an order which denied the motion for deficiency judgment and ordered disbursement of Weisman's $200,000 deposit as follows: (1) $1,500 to Makani as partial reimbursement of attorney's fees; (2) $13,465.87 to Makani as interest at the statutory rate of 10% on the principal sum due, as and for damages caused by the delay in closing; (3) $25,000 to Weisman and Maki jointly;[3] and (4) the balance of the deposit, in addition to the interest earned on the deposit, to Weisman. Judgment was entered and Weisman's appeal followed.

At the outset, we note that Weisman has failed to comply with Rule 3(b)(5), Rules of the Hawaii Supreme Court (RSC). Rule 3(b)(5), RSC, states in pertinent part:

(b) Opening Brief. Within 60 days after the filing of the record on appeal, the appellant shall file an opening brief, containing in the order here indicated:

\*      \*      \*

---

[3] The Stahls allegedly contributed $25,000 of their own funds towards the deposit, while Weisman contended that the $25,000 was a partial payment of his attorney's fees.

(5) A concise statement of the points on which appellant intends to rely, set forth in separate, numbered paragraphs. Each point shall refer to the alleged error upon which appellant intends to rely and shall show the manner in which it is raised, with a reference to the record where the same may be found.

\* \* \*

Where an opening brief does not contain a statement of points, the reviewing court may disregard any issue not in compliance with the Rule's requirement. *In re Miller and Lieb Water Co.,* 65 Haw. 310, 651 P.2d 486 (1982); *Lau v. Valu-Bilt Homes, Ltd.,* 59 Haw. 283, 582 P.2d 195 (1978); *Alamida v. Wilson,* 53 Haw. 398, 495 P.2d 585 (1972); *State v. Halemanu,* 3 Haw. App. 300, 650 P.2d 587 (1982); *State v. Napoleon,* 2 Haw. App. 369, 633 P.2d 547 (1981); *King v. Ilikai Properties, Inc.,* 2 Haw. App. 359, 632 P.2d 657 (1981); *Hana Ranch, Inc. v. Kaholo,* 2 Haw. App. 329, 632 P.2d 293 (1981); *State v. Pacariem,* 2 Haw. App. 277, 630 P.2d 650 (1981); *Crutchfield v. Hart,* 2 Haw. App. 250, 630 P.2d 124 (1981); *Tanuvasa v. City and County of Honolulu,* 2 Haw. App. 102, 626 P.2d 1175 (1981).

We choose not to disregard the issues raised by Weisman, notwithstanding his failure to comply with the requirements of Rule 3(b)(5), RSC. However, our review of the record indicates no error by the trial court.

A.

Weisman contends that the trial court erred in assessing delay damages and attorney's fees against him, because: (1) the trial court did not have jurisdiction *sua sponte* to impose a condition on the granting of his motion to withdraw his bid; (2) the trial court did not reserve the right to impose attorney's fees; (3) Makani was estopped from claiming any delay damages; (4) the trial court's denial of any deficiency judgment bars any claim for delay; and (5) the court improperly calculated the period of delay. We disagree with Weisman on all counts.

1.

Although a moving party is usually confined to the relief requested in his motion, a trial court has the inherent power, subject to limitations on its jurisdiction, to grant, deny, grant in part or grant alternative or appropriate relief. *See* 60 C.J.S. *Motions and Orders* § 39 (1969); 56 Am. Jur. 2d *Motions, Rules, and Orders* § 26 (1971).

The record indicates that at the hearing on Weisman's motion to eliminate payment to defendants or to withdraw his deposit and bid, the following exchange took place between the court and Weisman:

THE COURT: Okay. Mr. Weisman, is your motion to withdraw still there?

MR. WEISMAN: Yes, it is, your Honor.

THE COURT: Are you willing to pay the costs of carrying between the time this delay has been carried on? I have to ask that question. You have to be stuck with that. I may allow you to withdraw, perhaps, but with condition, are you paying that delay period, the 500 something plus dollars a day —

MR. WEISMAN: I think that's only appropriate, your Honor.

THE COURT: Are you willing to take that — I'm going to call it "jerk".

MR. WEISMAN: Yes. I think that's only appropriate.

THE COURT: Okay. And some expenses that may be involved, right?

MR. WEISMAN: It's only appropriate.

(Transcript, March 27, 1981, at 9.)

Weisman has not shown nor do we find any error in the court's action. Clearly, the trial court had the power to impose those conditions on the granting of Weisman's motion. Furthermore, the record is clear that Weisman was fully aware of the court's intentions and acquiesced in the court's action.

2.

With respect to the award of attorney's fees, the trial court's order of April 3, 1981, specifically stated,

3. That the deposit of $200,000 heretofore made by said Lawrence I. Weisman, together with such interest as may have been earned in respect thereto, shall be returned to him subject only to *further order of this Court taxing against said deposit such amount as this Court may find due for any delay caused by said Lawrence I. Weisman;* . . . . [Emphasis added.]

The record clearly indicates that the court not only intended Weisman to bear the cost of the delay but also the expenses connected with the delay. Expenses clearly includes attorney's fees.[4]

With respect to the amount of attorney's fees assessed, the record indicates that the court was not provided with any details of the services rendered by counsel. An award of attorney's fees will not be disturbed upon appellate review absent an abuse of discretion, and the fact that a trial court was not provided with an hourly breakdown of services is not grounds for reversal. *Smothers v. Renander,* 2 Haw. App. 400, 633 P.2d 556 (1981). During the period between the making of the bid and its withdrawal, seven motions were filed: two by Makani, four by Weisman and one by Stahls. Nearly two hours were spent in court during that period. The fourteen hours claimed by Makani's attorneys does not appear excessive. The court's handling of the matter clearly indicates that the court carefully exercised its discretion.

3.

Weisman's argument that Makani was estopped from claiming delay damages because it had made no such claim is without merit. The mere fact that Makani had not requested delay damages does not limit the court's authority to grant

---

[4] If Weisman had failed to complete the purchase of the property, the court could have imposed on him expenses of the sale, which include attorney's fees. *Powers v. Shaw,* 1 Haw. App. 374, 619 P.2d 1098 (1980). Similarly, expenses in the instant action includes attorney's fees.

appropriate relief under the circumstances. *See* 60 C.J.S. *Motions and Orders* § 39 (1969); 56 Am. Jur. 2d *Motions, Rules and Orders* § 26 (1971).

### 4.

Likewise, we find no merit in Weisman's argument that because the court did not enter a deficiency judgment against Stahls, it could not assess delay damages. Weisman was assessed damages suffered by Makani and caused by his actions, which had delayed the closing of the original auction sale. The damages were in no way connected with any deficiency due from the Stahls.

Weisman also contends that he had nothing to do with the delay and that the Stahls were the actual culprits. Weisman argues that Jon Stahl exceeded his authority in making the bid for Weisman and that any delay caused by the making and withdrawal of the bid is attributable to the Stahls. However, Weisman's argument does not address the question of why he did not repudiate the bid immediately upon learning that Jon Stahl had exceeded his authority. If Jon Stahl's actions exceeded his authority, Weisman's failure promptly to repudiate the bid caused the delay. *See* 3 Am. Jur. 2d *Agency* §§ 178, 179 (1962).[5] In fact, Weisman tried to take advantage of the "unauthorized" bid when he attempted to reduce the actual sale price of the property by eliminating any payment to Stahls. It was his action, again, that caused the delay.[6]

---

[5] Furthermore, on numerous occasions after the bid was made, Weisman represented to the court that he was prepared to close on the property. *See* R. 826; Transcript of March 12, 1981 Hearing, p. 10. If Weisman had complete knowledge of all material facts, his representation that he would close the sale would amount to ratification of Jon Stahl's acts.

[6] We take judicial notice that in *Weisman v. Stahl, et al.,* Civil No. 64950, Weisman sued the Stahls for bidding in this case on his behalf without any authority. Weisman has his remedy against Stahls.

### 5.

Weisman claims the delay damage award was excessive. We disagree. First of all, the court used the statutory interest rate applicable to judgments. *See* Hawaii Revised Statutes § 478-2 (1976, as amended). By virtue of the delay, Makani had been deprived of the benefit of the proceeds of the original sale and we deem it appropriate to use the statutory rate, since Weisman's activities delayed the entry of judgment herein. Secondly, the period of delay was calculated from February 25, 1981, the date of the bid by Stahls on behalf of Weisman, to March 25, 1981, two days before the court allowed Weisman to withdraw his bid. We find no error, since the court assessed the damages for a period shorter than the actual length of delay.

### B.

Weisman also contends that the court erred in denying his motion for assessment of attorney's fees against Stahls. Our review of the record indicates no order filed by the trial court denying the motion for attorney's fees. Although the instant case could have provided a proper forum for the assessment of attorney's fees for work done prior to his termination, *see Keating v. Keating,* 43 Haw. 51 (1958), Weisman had already filed a separate action against the Stahls which included a claim for these same attorney's fees.[7] We see no reason why the matter should not be resolved in that case.

### C.

Finally, Weisman raises as error the court's order requiring $25,000 to be held in escrow pending judgment in an unrelated case. We find this issue moot. A review of the record indicates that on October 28, 1981, the final report of the commissioner was filed and it included a receipt dated October 13, 1981,

---

[7] *Lawrence I. Weisman v. Jon Riley Stahl, Noriko Asano Stahl, and Stahl, Asano, Shigetomi Associates,* First Circuit Civil No. 64950.

which indicated Weisman received the $25,000.[8] This court will not decide moot questions. *Wiginton v. Pacific Credit Corp.,* 2 Haw. App. 435, 634 P.2d 111 (1981); *Sanders v. Point After, Inc.,* 2 Haw. App. 65, 626 P.2d 193 (1981); *International Market Place Corp. v. Liza, Inc.,* 1 Haw. App. 491, 620 P.2d 765 (1980).

Affirmed.

*Lawrence I. Weisman,* applicant-appellant, *pro se.*

*Mark Bernstein* for Makani Development Co.

*Paul Maki (Woo, Kessner & Duca* of counsel) for the Stahls (appearance only).

---

[8] On October 13, 1981, the United States Bankruptcy Court for the District of Hawaii issued a garnishee order in *In re Stahl, Asano, Shigetomi Associates, Jon Riley Stahl, and Noriko Asano Stahl,* Bk. No. 79-243/Misc. 81-0068, which ordered Commissioner Jack H. Mizuha to pay to judgment creditor Weisman whatever money he had in his possession belonging to the Stahls, the sum not to exceed $25,000.